PEOPLE *v.* WEINBERG.

1. BREACH OF THE PEACE—DISTURBANCE—STATUTE.

Statutory prohibition of making or exciting a disturbance or contention in business places embraces more than causing or threatening violence (CL 1948, § 750.170).

2. SAME—DISTURBANCE.

*Disturbance,* as used in statute prohibiting making or exciting a disturbance or contention in certain places, is something less than threats of violence, and means an interruption of peace and quiet, a violation of public order or decorum, or an interference with or hindrance of one in pursuit of his lawful right or occupation (CL 1948, § 750.170).

3. SAME—STATUTE.

Statute prohibiting making or exciting of a disturbance or contention in business places does not require proof of both a disturbance *and* a contention to sustain a conviction (CL 1948, § 750.170).

4. SAME—DISTURBANCE.

Acts of 15 defendants in standing in line in business office of savings and loan association, sitting on floor in front of tellers'

REFERENCES FOR POINTS IN HEADNOTES

[1-4] 12 Am Jur 2d, Breach of Peace and Disorderly Conduct §§ 2, 7, 8, 18, 28, 35.
[5-7] 12 Am Jur 2d, Breach of Peace and Disorderly Conduct §§ 6, 20, 33; 52 Am Jur, Trespass § 19.
[8, 9] 5 Am Jur 2d, Arrest § 13; 21 Am Jur 2d, Criminal Law § 325.
[10] 27 Am Jur, Indictments and Informations §§ 79, 123; 5 Am Jur 2d, Arrest §§ 8, 9.
[11] 27 Am Jur, Indictments and Informations §§ 123, 187.
[12] 27 Am Jur, Indictments and Informations §§ 114, 187.
[13, 14] 27 Am Jur, Indictments and Informations § 113.
[15, 16] 12 Am Jur 2d, Breach of Peace and Disorderly Conduct §§ 13, 38.
[17] 12 Am Jur 2d, Breach of Peace and Disorderly Conduct §§ 15, 16, 24, 25, 40.

windows when their turns came in line, obstructing transaction of business by customers at tellers' windows by so sitting, refusing to leave when requested to leave by agent of savings and loan association and policeman, and singing "freedom songs" in office of savings and loan association, *held*, to constitute making of a disturbance in violation of statute (CL 1948, § 750.170).

5. TRESPASS—BUSINESS OFFICE.

Business office of a savings and loan association is not a public place upon which any person can enter and remain at his own pleasure, even though members of the public are welcomed to come inside and do business.

6. SAME—BUSINESS OFFICE—CONTROL.

Savings and loan association, which invites the public to enter its business office and do business with it, does not thereby forfeit its right to exclude those whose conduct becomes objectionable after entering the office.

7. SAME—REFUSAL TO LEAVE.

Defendants who entered business office of savings and loan association, made a disturbance therein, and refused to leave when requested individually to do so by agent of association and police officer, necessitating their removal on stretchers by policemen, *held*, to be guilty of neglect or refusal to leave the lands or premises of another in violation of statute (CLS 1961, § 750.552).

8. CRIMINAL LAW—SUFFICIENCY OF WARRANT.

A warrant is sufficient if it sets out the substantial elements constituting the offense charged in language within the ordinary comprehension, and need not possess the degree of certainty required in indictments and informations, although whatever is proper for an information is sufficient for a warrant.

9. SAME — WARRANT — DISTURBANCE — FAILING TO LEAVE — SUFFICIENCY.

Words "failing to leave a business place when ordered by a duly authorized agent" are not unclear, and the words "disturbance or contention" are not so vague and insusceptible of definition as to render insufficient a warrant using such words in charging crimes (CL 1948, § 750.170; CLS 1961, § 750.552).

10. SAME—WARRANT—MULTIPLE DEFENDANTS.

Statute which confers discretion on court to grant separate trials where 2 or more defendants are jointly charged con-

templates that multiple defendants may be charged in one warrant (CL 1948, § 768.5).

11. SAME—WARRANT—MULTIPLE DEFENDANTS—OBJECTION—WAIVER.
Court of Appeals will not pass on alleged error in joining several defendants in one warrant when they did not move for separate trials.

12. SAME—WARRANT—BILL OF PARTICULARS—SEASONABLE MOTION.
Motion for bill of particulars setting up specifically the nature of the offense charged, made on the opening day of trial of 15 defendants charged with making and exciting a disturbance in a business office and failure to leave the office when ordered to do so by an agent, *held*, not seasonably made, and it was not error for the trial court to deny the motion (CL 1948, § 750.170; CLS 1961, § 750.552).

13. SAME—WARRANT—BILL OF PARTICULARS.
Failure to order a bill of particulars of crime charged constitutes reversible error only if it results in the defendant being deprived of a fair trial.

14. SAME—WARRANT—BILL OF PARTICULARS—PREJUDICE—DISCRETION OF COURT.
Denial of motion for bill of particulars on day of trial on charges of making or exciting a disturbance and failure to leave business office when ordered to leave by agent *held*, not an abuse of discretion, where the 15 defendants did not specify how they had been prejudiced, if at all, by denial of motion (CL 1948, § 750.170; CLS 1961, § 750.552).

15. SAME—TRESPASS STATUTES—FREEDOM OF SPEECH—FREEDOM OF ASSEMBLY—EQUAL PROTECTION.
Rights of free speech and freedom of assembly, and right to equal protection of the laws, guaranteed by the Constitution of the United States, are not violated by conviction of carrying on demonstrations, no matter how peaceful their conduct or commendable their motives, which conflict with properly drawn statutes or ordinances designed to promote law and order, protect the community against disorder, regulate traffic, safeguard legitimate interests in private and public property, or protect the administration of justice and other essential governmental functions (US Const, Ams 1, 14).

16. SAME—TRESPASS STATUTES—CONSTITUTIONAL RIGHTS.
Conviction of defendants of crimes of making or exciting a disturbance in office of savings and loan association and failure to

leave such office when ordered to do so by agent of association, *held*, not to violate defendants' rights of free speech and assembly, and their right to equal protection of the laws, in case where acts which constituted violation of statutes were done to protest alleged racial discrimination practiced by savings and loan association (US Const, Ams 1, 14; CL 1948, § 750.170; CLS 1961, § 750.552).

**17. SAME — TRESPASS STATUTES — DEMONSTRATION — MOTIVE — EVIDENCE.**

Motive of defendants, who were charged with making or exciting a disturbance in the office of a savings and loan association and failure to leave such office when ordered to do so by agent of association, was not in dispute or questioned at trial, and it was not error for trial judge to allow scope of cross-examination to show that motive was to protest alleged racial discrimination practiced by association, but not to allow raising issue of truth or falsity of allegations of discriminations (CL 1948, § 750.170; CLS 1961, § 750.552).

Appeal from Recorder's Court of Detroit; O'Hara (John P.), J. Submitted Division 1 October 5, 1966, at Detroit. (Docket No. 1,660.) Decided March 28, 1967.

Melvin Weinberg and 14 other persons were convicted of exciting and making a disturbance in a business place and of failing to leave a business place when ordered to do so by a duly authorized agent. Defendants appeal. Affirmed.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski*, Solicitor General, *Samuel H. Olsen*, Prosecuting Attorney, *Samuel J. Torina*, Chief Appellate Lawyer, and *Richard J. Padzieski*, Assistant Prosecuting Attorney, for the people.

*Lebenbom & Handler* (*Wallace M. Handler* and *Bruce A. Miller*, of counsel), for defendants.

Holbrook, J.   On October 4, 1963, the 15 defendants and others assembled outside the main office of complainant, the First Federal Savings & Loan Association, located at 751 Griswold, Detroit, Michigan.   Their purpose was to protest alleged discriminatory employment and loan practices of the association.   During the course of the day, various members of the group of which defendants were a part entered the premises of First Federal on four different occasions.   Each time the procedure was the same, *i.e.,* members of the group would stand in line, and when they reached the teller's windows they would sit on the floor immediately beneath the windows.   On the first three occasions the persons seated on the floor got up and left the building upon request.   When defendants entered the building for the fourth time, they refused to leave although they were each individually requested to do so by Mr. Aliber, the complainant's authorized agent.   They sang songs, blocked the teller's windows and were informed that they were interfering with the orderly business of the First Federal. They were also individually informed by Inspector Sheridan of the Detroit police department that they were in violation of the law.   After they refused to leave upon request, the defendants were placed under arrest and removed on stretchers by the police.

On October 24, 1963, the defendants were charged with exciting and making a disturbance or contention in a business place in violation of CL 1948, § 750.170 (Stat Ann 1962 Rev § 28.367), and with failure to leave a business place when ordered by a duly authorized agent, in violation of CLS 1961, § 750.552 (Stat Ann 1954 Rev § 28.820[1]).   Each defendant entered a plea of not guilty and the matter was tried before a jury commencing on December 4, 1963.   On the opening day of trial, defendants,

by a motion to dismiss, challenged the validity of the criminal warrant under the provisions of CL 1948, § 767.45 (Stat Ann 1954 Rev § 28.985). This motion, as well as defendants' motion for a bill of particulars, was denied. On December 12, 1963, the jury found each defendant guilty on both counts. On January 16, 1964, defendants were sentenced to probation for a period of one year.

A motion for new trial was filed on December 31, 1963, and dismissed on February 7, 1964. Subsequently, on January 11, 1965, the motion for new trial was reinstated and the order of February 7, 1964, was set aside. The reinstated motion for new trial was finally denied on November 5, 1965.

Defendants appeal and raise 6 questions for review which will be considered in order.

1. *Did the defendants make or excite a disturbance or contention in a business place within the meaning of CL 1948, § 750.170 (Stat Ann 1962 Rev § 28.367)?*

The statute which defendants were found to have violated is as follows:

"*Any person who shall make or excite any disturbance or contention in any* tavern, store or grocery, manufacturing establishment or any other *business place* or in any street, lane, alley, highway, public building, grounds or park, or at any election or other public meeting where citizens are peaceably and lawfully assembled, *shall be guilty of a misdemeanor.*" (Emphasis supplied.)

Appellants contend that their activities within the office of the complainant do not warrant the imposition of criminal penalties because their demonstration was peaceful. In other words, they did not excite a "disturbance or contention."

There is no dispute as to the conduct of these defendants. They entered the complainant's office,

sat down on the floor in front of the tellers' windows, interfered with complainant's business, and refused to leave.  While inside the building they also sang "freedom songs."  Because of the actions of these defendants, patrons of First Federal who would normally transact their business at windows reserved for that purpose had to be served at desks located in another portion of the office.  Others were forced to either step over or around the defendants.  The question is whether these facts constitute a violation of the above statute.  Reported cases dealing with the statute are of no assistance to us in this cause.  See *People* v. *O'Keefe* (1922), 218 Mich 1; *Ware* v. *Branch Circuit Judge* (1889), 75 Mich 488.

In Black's Law Dictionary (4th ed, 1951), p 563, a disturbance is defined as:

"Any act causing annoyance, disquiet, agitation, or derangement to another, or interrupting his peace, or interfering with him in the pursuit of a lawful and appropriate occupation or contrary to the usages of a sort of meeting and class of persons assembled that interferes with its due progress or irritates the assembly in whole or in part."

From the above definition it is clear that the statutory prohibition, framed in the disjunctive, embraces more than actual or threatened violence.  Violence, actual or threatened, is proscribed by the use of the word "contention."  The statute, however, does not require both a disturbance *and* a contention to sustain a conviction.  Either is sufficient.  A disturbance, which is something less than threats of violence, is an interruption of peace and quiet; a violation of public order and decorum; or an interference with or hindrance of one in pursuit of his lawful right or occupation.

A case very similar on its facts to that at hand though based on a somewhat dissimilar statute is *People* v. *Green* (1965), 234 Cal App 2d 871 (44 Cal Rptr 438) (certiorari denied 382 US 993 [86 S Ct 576, 15 L ed 2d 480]), where the defendants,

"entered the bank and at various tellers' windows interfered with, disturbed and delayed the business of the bank officials and that of its customers. Defendants' refusal to move aside to permit other customers to conduct their business at the bank at the windows continued for some time until the tellers closed the windows and transferred their work to an area reserved for business with officers of the bank behind a railed-in enclosure. * * * The conduct of the defendants was intended to and did obstruct, interfere with and delay the normal business relations of the bank and its officials and those of the public who were there for the transaction of business. The evidence shows beyond a reasonable doubt the guilt of each of the defendants."

Sitting on the floor on the inside of the building and acting as they did, constituted a disturbance. A savings and loan association and its shareholders have a right to conduct their business in an orderly, quiet, decorous manner. These rights were hindered and interfered with because appellants chose to ensconce themselves indecorously on the floor directly in the path of those desiring to transact business with the association. The defendants' actions obviously were intended to obstruct and interfere with the orderly business relations between the loan company and its customers. The guilt of each defendant beyond a reasonable doubt was clearly shown.

2. *Were defendants properly convicted of failing to leave a business place when so ordered by a duly authorized agent?*

Conviction of appellants on the second count was based on the following statute:

"Any person who shall wilfully enter, upon the lands or premises of another without lawful authority, after having been forbidden so to do by the owner or occupant, agent or servant of the owner or occupant, or *any person being upon the land or premises of another, upon being notified to depart therefrom by the owner or occupant, the agent or servant of either, who without lawful authority neglects or refuses to depart therefrom, shall be guilty of a misdemeanor.* (Emphasis supplied.) CLS 1961, § 750.552 (Stat Ann 1954 Rev § 28.820[1]).

Relying upon *Amalgamated Clothing Workers of America, AFL-CIO,* v. *Wonderland Shopping Center, Inc.* (1963), 370 Mich 547, defendants argue that, because of the nature of the business, any savings and loan association's offices are dedicated to the public and therefore any person may enter and remain at his own pleasure. An examination of *Wonderland, supra,* however, does not reveal serious support for the conclusion contended for by appellants.

Wonderland is a large shopping center, located in Livonia, Michigan, covering approximately 55 acres of land. Upwards of 60 tenants lease store space from Wonderland, Inc. The center is typical of the kind known to shoppers in southeastern Michigan in that it has a large mall area, many sidewalks and extensive parking facilities, all for the purpose of giving the public easy access to the various shops and stores doing business in the center. The clothing workers union sought to distribute handbills in the mall area, urging shoppers to refrain from purchasing clothing apparel which did not bear a union label. In upholding the right of the union to distribute handbills on the mall,

sidewalks, and parking areas, Justices BLACK and OTIS M. SMITH stated on p 565 that Wonderland, Inc., had,

"by the very necessities and profitable advantages of its invitational and fully effective plan of doing business, made a special dedication, to general public use during regular shopping hours, of its self-designated 'public area of the shopping center.' "

It is notable that the "public areas" of Wonderland were not held to include the inside areas of the various stores. This point is further emphasized by the following quotation, on p 569:

"The only difference between the public market of earlier generations and the shopping center of today is that the same operation is now more 'modern.' The motor car and motor truck have replaced the buggy and dray and the sellers are fewer as they take in more cash. The purpose, though, and that is what counts as sellers display and exhort and buyers discuss and select, is 'as old as civilization.' *The public outdoor walkways and malls are equally as. public. during. business. hours. regardless. of whether the fee rests with a public or private free-holder.*" (Emphasis supplied.) (Footnote omitted.)

Similarly, the sidewalk and street in front of First Federal are also public. But the public nature of these areas, whether consisting of a shopping center mall or a downtown street corner, does not affect abutting private establishments. It is axiomatic that any store, shop, bank or savings and loan association welcomes the public to come inside and do business. By this process, however, they do not thereby forfeit their right to exclude those whose conduct becomes objectionable after entry. To say that the mall area of a large urban shopping center is "public" is a far step from holding that the business offices of a savings and loan association are likewise public. The language of *Wonderland,*

*supra,* does not authorize such an extensive applica-. tion of its underlying principle, and is not analogous to the case at bar.

The only other case cited by appellants in support of their theory that the offices of First Federal are public is *Brown* v. *Louisiana* (1966), 383 US 131 (86 S Ct 719, 15 L ed 2d 637), where the defendants were convicted of failing to leave a public library when so ordered.

The points of difference between *Brown, supra,* and the instant case are (1) the petitioners in *Brown* were in a public library; and (2) their conduct was not indecorous, while that of the appellants in the present case clearly falls within that classification. Therefore, there is no foundation for the theory that the offices of the complainant are public, with the result that the owners thereof have no more control over their own property than they have over streets outside. The appellants were on private property, were requested to leave, refused to do so, and were bodily removed by police officers. This conduct is precisely within the clear and unambiguous terms of the statute which defendants were found to have violated.

The conclusion that appellants' convictions were lawful is further reinforced by *Adderley* v. *Florida* (1966), 385 US 39 (87 S Ct 242, 17 L ed 2d 149), where the United States Supreme Court sustained convictions of persons who were prosecuted under a Florida statute making it an offense to trespass "with a malicious and mischievous intent." The defendants had gathered on the grounds of a jail to protest the arrests of fellow demonstrators, and were themselves arrested after they refused to leave upon request.

"There is no evidence at all that on any other occasion had similarly large groups of the public

been permitted to gather on this portion of the jail grounds for any purpose. Nothing in the Constitution of the United States prevents Florida from evenhanded enforcement of its general trespass statute against those refusing to obey the sheriff's order to remove themselves from what amounted to the curtilage of the jailhouse. *The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated.* For this reason there is no merit to the petitioners' argument that they had a constitutional right to stay on the property, over the jail custodian's objections, because this 'area chosen for the peaceful civil rights demonstration was not only "reasonable" but also particularly appropriate.' Such an argument has as its major unarticulated premise the assumption that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please. That concept of constitutional law was vigorously and forthrightfully rejected in two of the cases petitioners rely on, *Cox* v. *Louisiana* (1965); 379 US 536, 559 (85 S Ct 453, 476, 13 L ed 2d 471, 487), at 554, 555 and 563, 564. We reject it again. The United States Constitution does not forbid a State to control the use of its own property for its own lawful nondiscriminatory purpose." (Footnotes omitted, emphasis supplied.)

We rephrase the next question of defendants so as to refer to the proper statutes.

3. *Was the criminal warrant against defendants proper under CL 1948, § 766.3 (Stat Ann 1954 Rev § 28.921) and CLS 1961, § 774.4 (Stat Ann 1963 Cum Supp § 28.1195)?*

Appellants allege two defects in the warrant: first, that it is vague and indefinite, and second, that the defendants were not charged individually in

separate warrants.   The requirements of a valid
warrant have been stated as follows:

"The statute [CL 1948, § 766.3 (Stat Ann 1954
Rev § 28.921) and CLS 1961, § 774.4 (Stat Ann 1965
Cum Supp § 28.1195)] requires that the warrant
shall recite the substance of the complaint.   The
constitution does not require technical accuracy in
setting forth and describing the offense.   It is
enough if the warrant informs the defendant of the
nature of the accusation, recites the substance of the
offense and describes it with such certainty as to
show it was within the jurisdiction of the court.
*  *  *  *A warrant is sufficient if it sets out the
substantial elements constituting the offense in lan-
guage within the ordinary comprehension, and need
not possess the degree of certainty required in in-
dictments and informations.*   It is the warrant which
notifies the accused of the charge against him; it is
the foundation and the guide for subsequent pro-
ceedings, and it could not properly perform its
functions if it did not state the subject of the
offense."   1 Gillespie, Michigan Criminal Law and
Procedure (2d ed), § 193.   (Footnotes omitted, em-
phasis supplied.)

In passing upon the sufficiency of an information,
the Supreme Court stated in *People* v. *Smith* (1925),
231 Mich 221, 223, that "it is the general rule that, in
charging a statutory offense, it is sufficient if it is
charged in the language of the statute."   Certainly,
whatever is proper for an information is likewise
sufficient for a warrant.

The warrant states the date and place of the
offense charged and describes the offense in the stat-
utory language.   The words "failing to leave a
business place when ordered by a duly authorized
agent" are not unclear.   Likewise, the words "dis-
turbance or contention" are not so vague and insus-
ceptible of definition as to hinder the defendants in
the preparation of their defense.   While it is true

that an accusation in the statutory language is not always sufficient to inform the defendant of the nature of the charge he is being called upon to defend, *People* v. *Maki* (1929), 245 Mich 455 (negligent homicide), appellants have failed to furnish support for their argument that this is such a case. Nowhere in the record of this case is there a specification by appellants of how the preparation of their defense was impaired.

CL 1948, § 768.5 (Stat Ann 1954 Rev § 28.1028) confers upon the court the discretion to grant separate trials where two or more defendants are jointly charged. Obviously, the existence of this statute presupposes that multiple defendants may all be charged together in the same instrument. Appellants did not move for separate trials. We do not review claimed errors not passed upon by the trial court.

4. *Did the lower court err in denying defendants' motion for a bill of particulars?*

The warrant against defendants was issued on October 24, 1963; the arraignments took place on various dates between October 25, 1963, and November 7, 1963; and the matter was set for trial on November 27, 1963, and adjourned to December 4, 1963. The motion for a bill of particulars was not raised until the actual day of trial, December 4, 1963.

The applicable statute, CL 1948, § 767.44 (Stat Ann 1954 Rev § 28.984), states "that the prosecuting attorney, *if seasonably requested* by the respondent, *shall* furnish a bill of particulars setting up specifically the nature of the offense charged." The statute uses the mandatory term "shall," but this is only effective if a seasonable request is made. In the instant case, the prosecution did not have notice of the motion until it was made in open court on the

first day of trial. This did not constitute a request seasonably made as required by the statute.

In any event the "failure to order a bill of particulars constitutes reversible error only in the event of an abuse of discretion which results in the defendant being deprived of a fair trial." *People* v. *Tenerowicz* (1934), 266 Mich 276, 288. Appellants have not specified how they were prejudiced, if at all, by the denial of their motion.

We conclude that in denying the motion there was no abuse of discretion resulting in defendants being deprived of a fair trial.

5. *Did conviction of these defendants of the offenses charged in the warrant constitute a violation of their rights under the First and Fourteenth Amendments to the Constitution of the United States?*

Appellants contend that their convictions have resulted in a violation of their rights of free speech, assembly, and equal protection of the laws, all protected under the First and Fourteenth Amendments to the Constitution of the United States. In support of their argument, appellants have cited four cases, one of which, *Brown* v. *Louisiana, supra,* has been discussed previously in this opinion.

In *Shuttlesworth* v. *City of Birmingham* (1965), 382 US 87 (86 S Ct 211, 15 L ed 2d 176), the defendant's conviction was for a violation of the Birmingham, Alabama, municipal code which prohibited persons from so standing on a sidewalk as to obstruct free passage, and also from standing on a sidewalk after having been requested by a police officer to move on. Another ordinance penalized defendant for failure to obey the lawful order of a police officer. In reversing the conviction on all counts, the Supreme Court held first that the ordinance which in effect permitted persons to stand on a public sidewalk

only at the whim of a police officer was unconstitutionally broad. Second, the Court held that since Alabama had previously construed the ordinance pertaining to the disobeyance of orders of a police officer to apply only to vehicular traffic, it could not be used against the defendant since he was a pedestrian and therefore not within the defined scope of the statute.

*Peterson* v. *Greenville* (1963), 373 US 244 (83 S Ct 1119, 10 L ed 2d 323), involved a conviction under a South Carolina trespass statute. The defendants, all Negroes, seated themselves at a lunch counter reserved for white persons only, and refused to leave upon request after they had been refused service, also upon request. They were asked to leave because they were violating a city ordinance enforcing the local custom of segregation. The prosecution was under a State trespass statute. In reversing the convictions as violations of defendants' rights to equal protection of the laws, the court held that State criminal processes employed to enforce discrimination mandated by a city ordinance cannot be sanctioned. The criminal sanctions imposed upon the defendants in the case at bar were not applied so as to enforce any discriminatory policy. On the contrary, the criminal process was invoked only after appellants seated themselves on the floor in complainant's offices and refused to leave.

In *Edwards* v. *South Carolina* (1963), 372 US 229 (83 S Ct 680, 9 L ed 2d 697), the defendants were convicted of breach of the peace following their peaceful efforts at the site of the State government to protest discrimination by the State of South Carolina. The convictions were reversed because the common-law offense of breach of the peace was vague, indefinite, and incapable of precise definition. The court said at pp 236, 237:

"We do not review in this case criminal convictions resulting from the evenhanded application of a precise and narrowly drawn regulatory statute evincing a legislative judgment that certain specific conduct be limited or proscribed. If, for example, the petitioners had been convicted upon evidence that they had violated a law regulating traffic, or had disobeyed a law reasonably limiting the periods during which the State House grounds were open to the public, this would be a different case.   *   *   * These petitioners were convicted of an offense so generalized as to be, in the words of the South Carolina supreme court, 'not susceptible of exact definition.' And they were convicted upon evidence which showed no more than that the opinions which they were peaceably expressing were sufficiently opposed to the views of the majority of the community to attract a crowd and necessitate police protection."

In the cases cited by appellants in support of their argument, the following is an enumeration of the grounds for reversal. (1) The State demanded a policy of discrimination. *Peterson, supra.* (2) The State was attempting to enforce an unconstitutionally broad statute or ordinance. *Shuttlesworth, supra; Edwards, supra.* (3) Insufficient evidence. *Brown, supra; Shuttlesworth, supra.* None of the above situations are applicable to the case at hand. The only point of contact between the case at bar and the cases cited is that the defendants in all instances were conducting protest demonstrations. This, however, is not a sufficient connection to make the cited cases controlling. In this regard, the following statement from *Cox* v. *Louisiana* (1965), 379 US 559, 574 (85 S Ct 476, 485, 13 L ed 2d 487, 498), is relevant.

"Nothing we have said here   *   *   *   is to be interpreted as sanctioning riotous conduct in any form or demonstrations, however peaceful their conduct

or commendable their motives, which conflict with properly drawn statutes and ordinances designed to promote law and order, protect the community against disorder, regulate traffic, *safeguard legitimate interests in private and public property,* or protect the administration of justice and other essential governmental functions." (Emphasis supplied.)

We do not accept defendants' last question as stated. The issue raised thereunder is: *Were the defendants precluded from showing the motive and reason for their sitdown?*

The defendants refer the Court to that part in the trial transcript having to do with the cross-examination of Mr. Aliber, an officer of the First Federal. Mr. Aliber had stated on direct examination that he had met one of the defendants, Mr. Weinberg, previously. It was then brought out on cross-examination that the occasion was at a meeting in the office of the loan association on September 27, 1963. Defendants' counsel desired to have the witness relate in detail the proceedings at that meeting. The trial judge permitted to be shown the persons present and the subjects discussed. As a result of this ruling the witness named 4 representatives of the loan association and 5 or 6 representing the National Association for the Advancement of Colored People, including Mr. Weinberg, as being present. The subjects discussed included the mortgage policy, hiring practices in terms of personnel, and job inventory of First Federal Savings & Loan Association.

The defendants claim that the court in so restricting cross-examination was in error because they should have been entitled to show motive as bearing on intent from what took place in the September 27, 1963, conference.

Defendants' counsel in his argument to the court in the absence of the jury, stated "now, we want to

know what took place at this previous meeting. It may or may not be material, but we are entitled to find out," and "we do not intend to make that meeting a fact in issue." The court properly limited the cross-examination so as to preclude the raising of the issue of the truth or falsity of the claims of the respective parties concerning defendants' asserted grievances.

In the same cross-examination of Mr. Aliber concerning what took place at the sit-down appears the following testimony:

"*Q.* Did you not testify on direct examination that Mr. McClendon gave you a response?
"*A.* Yes sir, Mr. McClendon and Mr. Weinberg.
"*Q.* And what did Mr. McClendon say to you?
"*A.* He said, 'I can't move, I'm sick.'
"*Q.* Is that all he said?
"*A.* And I said, 'What's the nature of your illness,' and he said, 'I'm sick of discrimination.'"

Defendant Weinberg testified "I deliberately intended to protest discrimination," and "I was in First Federal Savings & Loan Association to protest the discriminatory practices of that institution." Defendant Mrs. Marks testified in answer to the question "What was your business at First Federal?" Her answer was "I was protesting discrimination."

Defendant Miss Thomas in part testified as follows:

"*Q.* Why were you sitting on the floor?
"*A.* I was protesting.
"*Q.* Protesting what?
"*A.* The segregation methods of First Federal Bank."

Defendant Mrs. Ferland testified in part as follows:

"*Q.* Why were you sitting on the floor?

"*A.* I was protesting unfair employment practices and giving of loans."

The motive prompting the actions of the defendants was not in dispute or questioned. All defendants admitted they were not patrons of First Federal nor were they there to transact business.

Without passing upon whether the motive for "making a disturbance" or "refusing to leave a business place when so ordered by a duly authorized agent" is an essential element of the said offenses under the statute, we conclude there was no prejudicial error on the rulings of the court on the admissibility of the evidence.

Affirmed.

LESINSKI, C. J., and J. H. GILLIS, J., concurred.