PEOPLE *v.* HARRISON.

Opinion of the Court.

1. Trespass—Warning—Refusal to Leave.

Refusal of defendants to leave student union building of State university during a career carnival where they displayed signs and distributed literature which expressed opposition to the war in Vietnam next to a United States Marine Corps booth, after they were ordered to remove the signs and materials but were told they were welcome to be present and participate in the carnival *held,* not to be unlawful since the essence of trespass after warning statute is that owner or occupant of premises objects to the presence of certain individuals and orders them to *depart,* which order the individuals refuse to obey (CL 1948, § 750.552).

References for Points in Headnotes
[1–5] 52 Am Jur, Trespass § 84 *et seq.*

2. CRIMINAL LAW—STATUTES.

No one can be punished for doing an act unless it appears that the act sought to be punished comes clearly within both the spirit and letter of the law prohibiting it.

3. TRESPASS—OBSTRUCTION—UNIVERSITY BUILDINGS.

Conduct of defendants in displaying signs and distributing literature agianst war in Vietnam next to Marine Corps booth during career carnival in student union building where there are no restrictions on distribution of literature by students in public areas of the union, the public in general and students in particular were invited to go browse, defendants moved out of the way when requested, and one of their group tried to keep traffic flowing *held*, not to be violative of "obstruction" ordinance; although defendants were less mobile than others attending career carnival this does not of itself constitute a violation of the ordinance.

4. SAME—FREE AND NORMAL USE OF BUILDINGS.

The "free and normal use of university buildings and facilities" must admit of a significant degree of congestion during a career carnival.

DISSENTING OPINION.
QUINN, P. J.

5. TRESPASS—WARNING—STUDENT UNION BUILDINGS—STATE UNIVERSITY.

*Convictions of defendants for trespassing in student union building at State university where they displayed signs and distributed leaflets during a career carnival were proper where defendants were ordered by one with authority to remove the signs and leaflets from the building (CL 1948, § 750.552).*

Appeal from Ingham, Salmon (Marvin J.), J. Submitted Division 2 December 7, 1967, at Lansing. (Docket No. 2,019.)    Decided August 28, 1968. Leave to appeal granted by Supreme Court December 11, 1968.   381 Mich 792.

Howard Harrison, Fred Warren Janvrin, James Phillip Dukarm, and Phillip Halprin were convicted of trespassing and assembling in a manner which

obstructed the free and normal use of a building. Defendants appeal.  Reversed.

*Frank J. Kelley*, Attorney General, *Robert A. Derengoski* Solicitor General, *Donald L. Reisig*, Prosecuting Attorney, and *James R. Ramsey* and *James Theophelis*, Assistant Prosecuting Attorneys for the people.

*Norton Cohen* and *Dunnings & Gibson*, for defendants.

T. G. KAVANAGH, J.  We perceive abroad today a mood to accept, unquestioningly, critical statements and charges against courts and their decisions which statements and charges, in charity, can be best described as irresponsible.  For this reason, in light of the reported events which have transpired on various college campuses throughout this country and other countries throughout the world since the incident out of which the instant appeal arose, we deem it advisable to preface this opinion with a statement of what we do not decide herein.

We are *not* confronted here with the seizure or destruction of school property.  We are *not* confronted here with the imprisonment of individuals on school property.  We are *not* confronted here with the denial of access to the offices of a university. We are *not* confronted with the desecration of the flag, burning of draft cards, or assault on military personnel.

We are here concerned only with the propriety of the conviction of the individual defendants of the crime charged, under the circumstances hereinafter set forth.

On October 11 and 12, 1965, the placement office of Michigan State University sponsored a "career car-

nival" in the student union building. Various public and private employers were invited to set up booths in the union and to visit with students who stopped at the booths. The purpose of the carnival was to acquaint students with employment opportunities with the employers represented. One of the participating employers was the United States Marine Corps. On the morning of October 12, the defendants entered the student union building with signs and literature which expressed opposition to the military activities of the United States in Vietnam. They positioned themselves in the general vicinity of the Marine Corps booth and proceeded to pass out their literature to the people who came by. At approximately 3 p.m. the director of the placement office approached the defendants and read to them the following statement:

"Pursuant to the authority vested by the Constitution, by the Legislature of the State of Michigan, by the Board of Trustees of Michigan State University, and by Administration of the University I am now advising you that you are occupying space assigned to others and that thereby you are trespassing upon University property, and you are further violating University ordinances by displaying signs and distributing handbills upon property governed by the Board of Trustees without authority and by obstructing free and normal use of University facilities. .

"You have ten minutes in which to move your materials and signs outside of this building. You are as welcome as any other student or guest to view the displays of this Career Carnival as long as your activities are lawful and orderly."

The defendants declined to comply with the order and were arrested by university police officers.

A complaint was sworn out against the defendants charging them with unlawful conduct on 3 counts:

1. Violation of Michigan's trespass-after-warning statute. CL 1948, § 750.552 (Stat Ann 1954 Rev § 28.820[1]).

2. Assembling in the student union building in a manner which obstructed the free and normal use of a university building and facility in violation of § 16.01 of the ordinances of Michigan State University.

3. Displaying a sign or poster on university property calling attention to conscientious objection and the Vietnam war, in violation of § 30.02 of the ordinances of Michigan State University.

Count 3 was dismissed because, according to one university official, the ordinance in question was designed to control commercial advertising. The defendants were tried on counts 1 and 2 in the justice court for Lansing township, were convicted on both counts, and were each sentenced to a fine of $35 plus costs, or 15 days in the county jail. They appealed to the Ingham county circuit court, sitting without a jury, and were again found guilty. The circuit judge sentenced defendants Halprin and Harrison to 30 days in the county jail and defendants Janvrin and Dukarm to 10 days in the county jail. All the defendants have appealed their convictions to this Court.

The convictions for trespass cannot stand. The claimed objectionable conduct of defendants was neither an unlawful entry into the building nor an unlawful presence there, but rather the activities in which they participated while in the union. The essence of our trespass-after-warning statute is that the owner or occupant of premises objects to the presence of certain individuals and orders them to *depart,* which order the individuals refuse to obey. The gist of the order given defendants in the case at bar was that they should remove their signs and materials from the building, but that they were welcome to be present and participate in the career

carnival. Thus the objection was to the signs and material and not to the presence of the persons claimed to be trespassing. The impropriety of the charge under the statute is particularly clear in view of the cross-examination of defendant Janvrin by the prosecutor:

"*Q.* It was not a permanent eviction of you as an individual, was it?
"*A.* No.
"*Q.* You knew that you yourself was welcome there as a person?
"*A.* He had told me earlier in the morning that *without my literature* I was welcome as a guest of the University."

The facts in this case are significantly different from those before the Court in *People* v. *Weinberg* (1967), 6 Mich App 345, where the defendants were "sit-ins" who were ordered to depart from private property and refused to do so. The trespass statute has no application in the instant case.

The terms of § 16.01 of the university ordinances, as they appear in the people's brief, are:

"No person or persons shall, without authorization, assemble together anywhere on the campus for the purpose of creating any noise or disturbance, riot, 'panty raid' or other improper diversion, or assemble in a manner which obstructs the free movement of persons about the campus or the free and normal use of university buildings and facilities, or prevents or obstructs the normal operations of the university."

The circumstances within which the defendants performed their complained of activities are of some significance in determining whether they have transgressed the university's ordinance. The student union, where the events transpired, is a building ded-

icated to the use of students in pursuit of their own social, political, economic, and intellectual activities. The dean of students testified that there are no restrictions upon distribution of literature by students in the public areas of the union. There was a "career carnival" going on, and the public in general and students in particular were invited to come in and "browse." It is undisputed that defendants were not rowdy and were at all times polite and cooperative. The corroborated and uncontradicted testimony on behalf of defendants was to the effect that they were quick to move out of the way whenever requested to do so and that one of their group was commissioned to try to keep traffic flowing. Approximately 16,800 persons attended the carnival during its 2-day existence, and there was testimony that at times the carnival area became congested and it was sometimes difficult to approach some of the booths.

The question before us, then, is whether under the circumstances just related the conduct of the defendants was violative of the "obstruction" ordinance. Since this is a criminal prosecution the ordinance must be strictly construed and the convictions cannot be sustained unless the defendants' conduct comes "clearly and unequivocally" within the spirit and letter of the ordinance. *People* v. *Kirstein* (1967), 6 Mich App 107, 114.

We hold it does not, for as we read the record, the nub of the charges against the defendants is that although they did not remain stationary, they were somewhat less mobile than other persons attending the carnival. This may indeed have aggravated the congestion that naturally resulted from the presence of such a large number of carnival patrons, but it is not enough, of itself, to constitute a violation of the ordinance and to bring into operation the penal consequences thereof. The "free and normal use of

university buildings and facilities" in the context of this "career carnival" must surely encompass a significant degree of congestion in the carnival area. The burden was upon the prosecutor to establish a violation of the ordinance. We hold that he failed to do so and, accordingly, the convictions must be set aside.

Reversed.

Levin, J., concurred with T. G. Kavanagh, J.

Quinn, P. J., (*dissenting*). Early in the majority opinion it is pointed out what is not being decided. The opinion then states,

"We are here concerned only with the propriety of the conviction of the individual defendants of the crime charged, under the circumstances hereinafter set forth."

This is too simplistic. Inherent in the case is the basic question, can those charged with the responsibility of control of a public institution exercise that control?

Facts in the record, but not in the majority opinion, which are pertinent are as follows: the presence and activities of defendants interfered with the operation of the booths of the Marine Corps and Michigan National Bank, and the latter's representative asked someone in authority to correct the situation. The defendants refused to leave because they were not shown a valid ordinance, they did not know who signed the order, and they were exercising their right of free speech. Among the signs and leaflets in the possession of defendants was a box for contributions for "medical aid for the Viet Cong". One purpose of defendants was to embarrass the military forces of the United States.

The pertinent part of the trespass statute involved, CL 1948, § 750.552 (Stat Ann 1954 Rev § 28.820[1]) reads:

"* * * or any person being upon the land or premises of another, upon being notified to depart therefrom by the owner or occupant, the agent or servant of either, who without lawful authority neglects or refuses to depart therefrom, shall be guilty of a misdemeanor."

The majority holds that the statute has no application because the gist of the order given defendants was,

"That they should remove their signs and materials from the building, but that they were welcome to be present and participate in the career carnival."

This is sophistry. Read in context with the events then occurring, the order told defendants to leave and why they were so ordered. The order was given by one authorized to give it, and it was a reasonable order under the circumstances. Defendants had no lawful authority to neglect or refuse to depart, and in my view, the statute is applicable.

It is true that there are factual differences between this case and *People* v. *Weinberg* (1967), 6 Mich App 345. *Weinberg* involved "sit-ins" on private property and here we have demonstrators on public property, but the basic issue is the same under the trespass statute involved in both cases, namely: after being asked to depart, does the record establish lawful authority to neglect or refuse to depart? On the facts of *Weinberg* this Court said no, and on the facts of Harrison, I say no.

It is unnecessary to discuss the conviction on count 2, since affirmance of the trial court on count 1 has the same result as affirmance on both counts.

The other issues raised by defendants on appeal have been considered and found to be so unsubstantiated as to require no discussion.

I vote to affirm.