NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0476n.06

Case No. 22-1222

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

WILLIE E. BURTON,

    Plaintiff-Appellant,

v.

CITY OF DETROIT, MICHIGAN; LISA CARTER; DAVID LEVALLEY; NICK KYRIACOU; AIMAN SAID,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)

FILED

Nov 23, 2022
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN

O P I N I O N

Before: COLE, GIBBONS, and BUSH, Circuit Judges.

COLE, Circuit Judge. On July 11, 2019, Commissioner Willie E. Burton was arrested at a Detroit Board of Police Commissioners ("BOPC") community meeting. After the arrest, Burton sued the City of Detroit, Detroit Police Commissioner Lisa Carter, and Detroit Police Officers David LeValley, Nick Kyriacou, and Aiman Said, alleging violations of the Fourth and First Amendments and municipal liability under 42 U.S.C. § 1983; intentional infliction of emotional distress and false arrest under Michigan state law; and seeking a declaratory judgment under 28 U.S.C. § 2201. The district court granted summary judgment in favor of all defendants on the basis that probable cause existed for the arrest. Burton appeals the court's ruling as to all claims, arguing that there was no probable cause for his arrest. Because there is clear evidence that Burton

disrupted the meeting, we agree with the district court that there was probable cause for his arrest. Accordingly, we AFFIRM the district court's decision.

## I. BACKGROUND

### A. Facts

Burton was elected to the BOPC in 2013 and has represented the Fifth District of Detroit in this capacity since 2014. The BOPC provides oversight for the Detroit Police Department ("DPD"). The BOPC Bylaws require that all BOPC meetings be conducted in conformity with Robert's Rules of Order. The Bylaws further state that every commissioner who seeks to speak during a meeting must first address the Chair and speak only "upon recognition by the presiding officer[.]" (BOPC Bylaws, R. 44-2, PageID 748.)

On July 11, 2019, the BOPC held a community meeting at which Carter was the Chairperson. The parties accept as true for this motion or do not dispute the general timeline and facts that follow. Roughly twenty minutes into the meeting, Burton interrupted Carter, and said "Madam Chair." Carter responded with "Commissioner Burton," thereby recognizing him as required by the Bylaws. Burton then asked Carter what she would do differently as Chair. Carter responded that Burton's comment was out of order. Burton continued speaking, asking about the BOPC's potential policy regarding the use of facial recognition software to identify defendants, because of his views of the high rates of misidentification of black people by this software. At this point, Carter told Burton that if he continued to speak, he would be removed from the meeting.

DPD Officer LeValley then told Burton that if Burton continued speaking out of order, DPD officers would take action. Burton accused LeValley of threatening him and continued speaking, at which point Carter announced that Burton was out of order for the second time. Burton persisted, so Carter called him out of order a third and final time, and then asked LeValley

to remove Burton from the meeting. DPD Officers Kyriacou and Said, at LeValley's behest, approached Burton and asked him to leave the meeting.

But Burton, believing that he could not be forcibly removed from a BOPC meeting under the Bylaws without a majority vote from the Board members, refused to submit peacefully to arrest. An altercation occurred between Burton and the officers attempting to arrest him, with Burton yelling at the officers to stop grabbing him. While attempting to remove Burton, the officers pulled him out of his chair and in doing so, his head struck the ground. During this encounter, the community members became extremely agitated, screaming at the officers to let Burton go, filming the altercation, and attempting to follow the officers outside the meeting room.

The officers then placed Burton, handcuffed, in the back of a police car and brought him to a Detroit Detention Center. Burton inquired, multiple times, why he was arrested—specifically which statute he had violated—and none of the officers responded. Nor did the officers read Burton his Miranda Rights. Though ultimately Burton was not charged with a crime, the officers contend that he was arrested for causing a disturbance at the meeting, *see* Mich. Comp. Laws § 750.170, and obstructing police officers' duties by resisting arrest, *see* Mich. Comp. Laws § 750.81d.

## B. Procedural History

Burton filed the instant lawsuit in the Eastern District of Michigan against the City of Detroit and Carter, LeValley, Kyriacou, and Said ("the Officials") seeking damages for the concussion, anxiety, insomnia, and emotional distress he allegedly suffered because of the arrest. Burton also sought a declaratory judgment, asking the court to declare the Officials' actions unconstitutional. After twice seeking leave to amend the complaint, Burton filed the current third amended complaint. All defendants moved for summary judgment under Rule 56. The district

court granted summary judgment on all counts, finding that there was probable cause for the arrest and thus the Officials and the City were immune from suit. Burton timely appealed the grant of summary judgment.

## II. ANALYSIS

We consider in turn Burton's Section 1983 claims, state law claims, and claim for declaratory judgment. Each claim fails because there was probable cause for Burton's arrest.

### A. Standard of Review

We review a grant of summary judgment based on qualified immunity de novo "because application of this doctrine is a question of law." *Leonard v. Robinson*, 477 F.3d 347, 353 (6th Cir. 2007) (quoting *McCloud v. Testa*, 227 F.3d 424, 428 (6th Cir. 2000)). Summary judgment may only be granted where there is no genuine dispute of material fact. Fed. R. Civ. Proc. 56(a). The crux of the analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law[.]" *Jordan v. Howard*, 987 F.3d 537, 542 (6th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). In other words, there is no genuine issue of material fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Additionally, an issue of material fact is not "genuine" where the non-moving party raises only "some metaphysical doubt as to the material facts." *Id.* And when a governmental official claims qualified immunity, "a plaintiff bears the burden of overcoming qualified immunity." *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021).

**B. Section 1983 Claims**

Burton brings three 42 U.S.C. § 1983 claims against the City and the Officials. "Section 1983 provides a cause of action against any person who, under color of state law, deprives an individual of any right, privilege, or immunity secured by the Constitution and federal law." *McKnight v. Rees*, 88 F.3d 417, 419 (6th Cir. 1996). Qualified immunity acts as an affirmative defense against Section 1983 claims if the government officials' "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Barker v. Goodrich*, 649 F.3d 428, 433 (6th Cir. 2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The doctrine ensures that public officials are held "accountable when they exercise power irresponsibly," but also protects "the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

We analyze qualified immunity using a two-pronged inquiry. "First, a court must decide whether the facts that a plaintiff has . . . shown make out a violation of a constitutional right." *Id.* at 232. Second, "the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct." *Id.* Here, we begin and end with the first prong.

*1. Fourth Amendment Claim*

Burton first claims that the Officials' conduct violated the Fourth Amendment because they lacked probable cause to arrest him. Fourth Amendment seizures must be "reasonable," which requires probable cause to believe the individual has committed a crime. *Bailey v. United States*, 568 U.S. 186, 192 (2013). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Arnold v. Wilder*, 657 F.3d 353, 363 (6th Cir. 2011) (quoting *United States v. Pearce*, 531 F.3d

374, 380–81 (6th Cir. 2008)). And whether an officer has probable cause to arrest "ordinarily depends, in the first instance, on state law." *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007) (citation omitted).

In Michigan, "[a] peace officer, without a warrant, may arrest a person" when "[a] felony, misdemeanor, or ordinance violation is committed in the peace officer's presence." Mich. Comp. Laws § 764.15(1)(a). The Officials contend that they arrested Burton for disrupting the meeting in violation of Michigan Compiled Laws Section 750.170, and for resisting a lawful arrest in violation of Michigan Compiled Laws Section 750.81d. Because the Officials observed Burton violating the law, there was probable cause for the arrest.

Section 750.170 makes it a misdemeanor to "make or excite any disturbance or contention . . . at any . . . public meeting where citizens are peaceably and lawfully assembled[.]" Mich. Comp. Laws § 750.170. It is undisputed that the BOPC community meeting was a public meeting where citizens were assembled. *Id.* Michigan courts have defined a "disturbance," in the context of the statute, as "[a]ny act causing annoyance, disquiet, agitation, or derangement to another, or interrupting his peace[.]" *People v. Weinberg*, 149 N.W.2d 248, 251 (Mich. Ct. App. 1967) (quoting Black's Law Dictionary 563 (4th ed., 1951)); *see People v. Rice-White*, No. 350250, 2021 WL 220801, at *2 (Mich. Ct. App. Jan. 21, 2021) (finding that "disturbance" includes "an interruption of peace and quiet; a violation of public order and decorum"); *see also Lungoski v. Akers*, No. 21-2688, 2022 WL 4129403, at *3 (6th Cir. Sept. 12, 2022) (using the definition put forth by the Michigan Court of Appeal in *Weinberg*, 149 N.W.2d at 251, to analyze a Fourth Amendment claim).

Under this broad definition of disturbance, Burton caused "annoyance" and "agitation" when he continued talking despite Carter's telling him he was out of order three separate times, as

well as after LeValley informed Burton that Burton would be removed if he continued to speak out of turn. This conduct also "interrupt[ed the] peace and quiet" of the meeting, and "violat[ed the] public order and decorum." *See Rice-White*, 2021 WL 220801, at *2. As the Officials contend, they arrested Burton because he "disturbed the ability of [the] public bod[y] to conduct their business in an orderly fashion," both because he refused to let Carter move forward with the meeting and because his interruption and resistance to arrest led to public disruption, including community members yelling and approaching the commissioners. (Def. Mot. for Summ. J., R. 30, PageID 473.)

Burton's only argument against probable cause is that the Officials did not follow Robert's Rules of Order when they arrested and removed him, because the Rules state that board members may only be removed from a meeting by a majority vote. However, we have never recognized that parliamentary meeting rules supersede validly enacted state law. Regardless of whether the Rules were followed or not, Burton disturbed the meeting and therefore violated state law, providing the Officials with probable cause to arrest him.

The Officials also contend they had additional probable cause to arrest Burton for resisting arrest under Section 750.81d, which makes it a felony to "assault[], batter[], wound[], resist[], obstruct[], oppose[], or endanger[] a person who the individual knows or has reason to know is performing his or her duties." Mich. Comp. Laws § 750.81d. The elements of this crime are (1) that the defendant "obstructed" a police officer, (2) that the defendant knew or should have known that the individual "obstructed" was a police officer, and (3) that the "officer[] acted lawfully." *Barrera v. City of Mount Pleasant*, 12 F.4th 617, 622 (6th Cir. 2021) (quotation omitted).

Here, Burton does not contend that he was unaware the Officials were police officers, so this inquiry turns on whether Burton "obstructed" a police officer, and whether the "officer[] acted

lawfully." *Id.* The Officials argue that Burton violated the statute by "refus[ing] to leave the meeting after being asked to do so by police officers[,]" thereby disobeying a lawful "command." (Appellee Br. 25.) This command was lawful if the Officials had probable cause to arrest Burton for violating Section 750.170. This inquiry therefore turns on whether there was probable cause to initiate the arrest in the first place: Because we have already concluded that there was probable cause to arrest Burton for causing a disturbance in violation of Section 750.170, the Officials lawfully performed their duties when they arrested him, and Burton obstructed this performance by resisting arrest. As such, there was probable cause for the arrest. The Officials therefore did not violate Burton's clearly established Fourth Amendment rights and are entitled to qualified immunity.

### 2. First Amendment Claim

Burton also claims that the Officials violated his First Amendment rights when they arrested him, a claim that similarly lacks merit because there was probable cause for the arrest. Under the First Amendment, government officials may not subject an individual, like Burton, to retaliatory actions when the individual engages in protected speech. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). To establish a retaliation claim, Burton must show "(1) that [he] was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused him to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of [his] constitutional rights." *Paige v. Coyner*, 614 F.3d 273, 277–78 (6th Cir. 2010) (citing *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998)). All parties agree that Burton satisfies the first two prongs of the analysis, but Burton cannot establish the third prong because the Officials had probable cause to arrest him. *See Nieves v. Bartlett*, 139 S.Ct. 1715, 1723–24 (2019) (holding that

a plaintiff's retaliatory arrest claim fails as a matter of law because there was probable cause to arrest the plaintiff). "As *Nieves* makes clear, if there is a showing of probable cause, a retaliatory arrest claim fails." *Hartman v. Thompson*, 931 F.3d 471, 484–85 (6th Cir. 2019).

Because the Officials had probable cause to arrest Burton, we agree with the district court that Burton fails to meet his burden in establishing the elements of a First Amendment retaliation claim, and that the Officials are entitled to qualified immunity.

*3. Municipal Liability*

Burton's third and final Section 1983 cause of action states that the City of Detroit is liable for the actions of its Officials. Burton can establish *Monell* liability by pointing to "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Burton contends that the City is liable under the first three methods. But he is unable to show a violation of a claimed federal right because there was probable cause for his arrest. Thus, he cannot show a violation based on the municipality's policy or custom. We therefore agree with the district court and affirm the grant of summary judgment as to this claim.

## C. State Law Claims

Burton also brought two state law claims against the Officials: a claim of false arrest and a claim for intentional infliction of emotional distress. Because there was probable cause for the arrest, both claims fail.

To prevail on a claim of false arrest in Michigan, Burton "must show that the arrest was not legal, i.e., the arrest was not based on probable cause." *Peterson Novelties, Inc. v. City of*

*Berkley*, 672 N.W.2d 351, 362 (Mich. Ct. App. 2003).  As discussed above, Burton's arrest was based on probable cause, and so the false arrest claim may not proceed.  We therefore affirm the district court's grant of summary judgment on this claim.

As for the claim regarding emotion distress, if an officer has probable cause for an individual's arrest, "as a matter of law [the officer] cannot be liable for intentional infliction of emotional distress." *Walsh v. Taylor*, 689 N.W.2d 506, 517 (Mich. Ct. App. 2004) (citing *Cebulski v. City of Belleville*, 401 N.W.2d 616, 618 (Mich. Ct. App. 1986)).  As with the false arrest claim, our finding of probable cause for Burton's arrest defeats his intentional infliction of emotional distress claim, and we affirm the district court's grant of summary judgment.

**D.  Declaratory Judgment**

Last, Burton seeks a declaratory judgment under 28 U.S.C. § 2201.  Burton asks the district court to declare that the Officials violated his First, Fourth, and Fifth Amendment rights when they arrested him for speaking during the meeting.  As discussed above, however, the Officials did *not* violate Burton's constitutional rights when they arrested him for violating Michigan state law by disturbing the meeting.  We therefore affirm the district court's dismissal of this claim.

III.  CONCLUSION

For the foregoing reasons, we affirm the district court's grant of summary judgment on all counts.