# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

MARY ELIZABETH VANDENBERG,

Defendant-Appellant.

FOR PUBLICATION
October 2, 2014
9:00 a.m.

No. 314479
Ottawa Circuit Court
LC No. 12-036598-FH

Before: RONAYNE KRAUSE, P.J., and HOEKSTRA and WHITBECK, JJ.

HOEKSTRA, J.

Following a jury trial, defendant appeals as of right her convictions of resisting and obstructing a police officer, MCL 750.81d(1), and making or exciting any disturbance or contention, MCL 750.170. Because the phrase "excite . . . any contention" is unconstitutionally vague and overbroad, we reaffirm the holding of *People v Purifoy*, 34 Mich App 318, 321; 191 NW2d 63 (1971), and we reverse and remand for a new trial.

## I. FACTS & PROCEDURAL HISTORY

According to the evidence introduced at trial, defendant went to the 58th district court in Hudsonville, Michigan to pay a traffic ticket. Rather than simply pay the ticket, when defendant approached the clerk's window, she proceeded to read a statement regarding the "need for autonomy" and her "frustration" at having to pay a ticket when, from defendant's viewpoint, the fine had been demanded by "threat or force." Defendant's brother, who had accompanied defendant to the courthouse, videotaped defendant's activities in contravention of posted signs prohibiting the use of cameras. The clerk grew "nervous" as a result of defendant's behavior, and a deputy present at the scene told defendant's brother to stop recording. Defendant then attempted to read her statement to the deputy. Thereafter, when a supervisor came to the clerk's window, defendant attempted to pay her ticket with 145 single dollar bills which she had defaced with black and red marker. Following the directions of the deputy, employees refused to accept the defaced bills. According to the clerk and her supervisor, defendant then grew "very agitated" and became "argumentative." A bystander in the building testified at trial that defendant began to make a "big scene" and "started exploding," meaning that defendant was "just being loud."

The deputy asked defendant to leave, and other officers arrived to help walk defendant to the exit. They created "a block wall and started walking [defendant] towards the exit." According to one officer's description, defendant "passively resist[ed]" by repeatedly stopping

-1-

and trying to talk to the officers. After defendant had been escorted past security to the building's vestibule, defendant disobeyed the officers' instructions to leave the building. At that time, one of the officers informed defendant that she was under arrest. Defendant proceeded to struggle, flailing her arms and later stiffening her arms to prevent officers from handcuffing her. After the officers stunned defendant with a Taser and sprayed her with pepper spray, they managed to handcuff her.

Defendant was tried before a jury for making or exciting a disturbance or contention, MCL 750.170, and resisting and obstructing a police officer, MCL 750.81d(1). At trial, it was the prosecution's theory, that defendant did not go the courthouse to lawfully conduct business, but that defendant had "confrontation on her mind" and that she "went to the courthouse to create tension and challenge." According to the prosecution, defendant "became more agitated" when employees refused to accept her money, and she began to draw the notice of passersby. Defendant was, in the prosecution's view, "noticeably causing a disturbance in the courthouse lobby." In closing arguments, the prosecutor summarized her theory of the case as follows:

> With disturbing the peace, the defendant made or excited a disturbance or a contention. There's no doubt, ladies and gentlemen, on what she was doing in the lobby that day. You heard from [a passerby], who explained the scene that [defendant] had created; the court clerks . . . explained that she caused a significant contention or disturbance even amongst the clerks alone. The clerks were so disturbed and heard such contention that one of the ones behind the scenes actually went to the branch office and obtained police officer back up. If that's not exciting a disturbance or contention, I don't know what is . . . .

Elsewhere, the prosecutor focused very specifically on the "contention" component of the statute, arguing, for example, that "it still adds up to the defendant causing a contention and that was a contention she planned to cause at least a day in advance." The jury convicted defendant of both resisting and obstructing a police officer and making or exciting any disturbance or contention.

Defendant now appeals her convictions. She argues that MCL 750.170 is unconstitutionally overbroad, and that, consequently, she could resist the arrest insofar as it was unlawfully premised on her exciting of a contention. In particular, she asserts that, unless the words "excite . . . any contention" are written out of the statute, MCL 750.170 criminalizes constitutionally protected speech, thereby impinging on First Amendment freedoms. Because the trial court's instructions to the jury included reference to this "contention" language and the prosecution argued that defendant created a contention, defendant maintains that she may have been convicted and unlawfully arrested for the exercise of constitutionally protected speech. For this reason, defendant argues her convictions must be reversed.

## II. STANDARD OF REVIEW & RULES OF CONSTRUCTION

On appeal, constitutional questions are generally reviewed de novo. *People v MacLeod*, 254 Mich App 222, 226; 656 NW2d 844 (2002). However, defendant failed to challenge the constitutionality of MCL 750.170 before the trial court, meaning that her constitutional claim is unpreserved and reviewed for plain error. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130

(1999). Under this standard, defendant bears the burden of demonstrating a "clear or obvious" error and that this error affected her substantial rights. *Id.* at 763-764. To have affected substantial rights, "there must be a showing of prejudice, i.e., that the error affected the outcome of the lower-court proceedings." *People v Jones*, 468 Mich 345, 356; 662 NW2d 376 (2003). Even if defendant satisfies this burden, an appellate court will reverse only if the plain error led to the conviction of an innocent defendant or "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings . . . ." *Carines*, 460 Mich at 763-764 (citation omitted).

When considering the constitutionality of a statute, we begin with the presumption that statutes are constitutional, and we construe statutes consistent with this presumption unless their unconstitutionality is readily apparent. *People v Rogers*, 249 Mich App 77, 94; 641 NW2d 595 (2001). The party challenging a statute's constitutionality bears the burden of proving its invalidity. *People v Malone*, 287 Mich App 648, 658; 792 NW2d 7 (2010). A statute may be challenged as unconstitutionally vague for three reasons: "(1) the statute is overbroad and impinges on First Amendment freedoms, (2) the statute fails to provide fair notice of the proscribed conduct, and (3) the statute is so indefinite that it confers unfettered discretion on the trier of fact to determine whether the law has been violated." *Rogers*, 249 Mich App at 94-95.

To ascertain whether a statute is unconstitutionally vague or overbroad, we consider the entire text of the statute and any related judicial constructions. *Id.* at 94. A law may be found to be unconstitutionally overbroad only where it "reaches a substantial amount of constitutionally protected conduct." *People v Rapp*, 492 Mich 67, 73; 821 NW2d 452 (2012) (citation omitted). "[C]riminal statutes must be scrutinized with particular care, and those that prohibit a substantial amount of constitutionally protected conduct may be facially overbroad even if they have a legitimate application." *Id.* (footnote and citations omitted). However, a facially overbroad statute may be saved "where it has been or could be afforded a narrow and limiting construction by state courts or if the unconstitutionally overbroad part of the statute can be severed." *Rogers*, 249 Mich App at 96.

## III. CONSTITUTIONALITY OF MCL 750.170

Relevant to defendant's arguments, in broad terms, "the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *United States v Stevens*, 559 US 460, 468; 130 S Ct 1577; 176 L Ed 2d 435 (2010). The recognized function of this freedom of speech is to invite dispute and enable "free trade in ideas," including those ideas many may find distasteful or challenging. *Virginia v Black*, 538 US 343, 358; 123 S Ct 1536; 155 L Ed 2d 535 (2003); *Terminiello v Chicago*, 337 US 1, 4; 69 S Ct 894; 93 L Ed 1131 (1949). Accordingly, "[i]t is firmly settled that under our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers . . . or simply because bystanders object to peaceful and orderly demonstrations." *Bachellar v Maryland*, 397 US 564, 567; 90 S Ct 1312; 25 L Ed 2d 570 (1970). (internal citations omitted).

Specifically at issue in this case is the constitutionality of MCL 750.170, which provides:

> Any person who shall make or excite any disturbance or contention in any tavern, store or grocery, manufacturing establishment or any other business place

or in any street, lane, alley, highway, public building, grounds or park, or at any election or other public meeting where citizens are peaceably and lawfully assembled, shall be guilty of a misdemeanor.

The present case is not the first occasion on which this Court has considered the constitutionality of this statutory provision. Most notably, in *Purifoy*, 34 Mich App at 320 (opinion by LESINSKI, C.J.), the defendant was arrested after throwing a rock at police officers at the scene of a public disorder, and he was convicted in a bench trial of making or exciting a disturbance or contention under MCL 750.170. On appeal, the defendant challenged the constitutionality of MCL 750.170, asserting it was unconstitutionally vague and overbroad. *Id.* This Court agreed with the defendant's claims that the statute was overbroad as written, and, because the defendant's conviction may thus have rested on an unconstitutional basis, the Court reversed the conviction and remanded for a new trial. *Id.* at 321-322 (opinion by LESINSKI, C.J.). See also *id*. at 324 (DANHOF, J. and BRENNAN, J., concurring in part and dissenting in part). In reaching this conclusion, Chief Judge Lesinski specifically recognized that the "excite any contention" language must be read out of the statute, and in doing so the Court relied on the reasoning of a special three-judge panel in federal court, which had previously determined that the words "excite any contention" must be read out of MCL 750.170 to accord with the principle that public expression of ideas may not be prohibited merely because the ideas are themselves offensive to others. *Id.* at 321-322 (opinion by LESINSKI, C.J.), citing *Detroit Metro Welfare Rights Org v Cahalan*, unpublished memorandum opinion of a special three judge panel, Civil Action No. 34006 (ED Mich. 1970).[1] See also *id*. at 324 (DANHOF, J. and BRENNAN, J., concurring in part and dissenting in part) (recognizing that application of the decision of three judge panel necessitated the reversal of the defendant's conviction).

More fully, relying on *Bachellar*, 397 US at 567, the three judge federal panel referenced in *Purifoy* described the unconstitutional overbreadth of MCL 750.170 as follows:

Our careful inspection of the statute herein attacked convinces, however, that a portion of its language is, on its face, so vague and overbroad as potentially to threaten First Amendment rights. That portion of state law which purports to make it a crime to "excite . . . contention . . . in any street, land, alley, highway, public building, grounds or park" is subject to the logical construction that peaceful protest activity may be the subject of criminal sanction simply because it excites strong or possibly violent opposition from others.

The United States Supreme Court has very recently dealt with this same problem in *Bachellar* . . . . It said in part:

"Any shock effect caused by the placards, remarks, and peaceful marching must be attributed to the content of the ideas being

---

[1] The decision of the special three judge panel is not available through traditional research resources. Discussions of the opinion can be found in *Purifoy*, 34 Mich App at 321-322 (opinion by LESINSKI, C.J.) and *People v Mash*, 45 Mich App 459, 462-463; 206 NW2d 767 (1973).

expressed, or to the onlookers' dislike of demonstrations as a means of expressing dissent. But '[i]t is firmly settled that under our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers . . . or simply because bystanders object to peaceful and orderly demonstrations.'"

\* \* \*

It appears to this Court that the portions of the Michigan Statute cited above are similarly repugnant to the First Amendment of the Federal Constitution. . . .

\* \* \*

So that there is no possibility of our being misconstrued, with the elision of the constitutionally offensive language, the Michigan Statute would read as follows:

"Any person who shall make any disturbance in any tavern, store or grocery, manufacturing establishment or any other business place or in any street, lane, alley, highway, public building grounds or park, or at any election or other public meeting where citizens are peaceably and lawfully assembled, shall be guilty of a misdemeanor." [*Detroit Metro Welfare Rights Org*, unpub op at 4-6 (internal citations omitted).]

As noted, in *Purifoy*, both the lead opinion and the concurring/dissenting followed the three judge federal panel's excise of the "contention" language. *Id.* at 321-322 (opinion by LESINSKI, C.J.), citing *Bachellar*, 397 US at 564. See also *id.* at 324 (DANHOF, J. and BRENNAN, J., concurring in part and dissenting in part). Since that time, this Court has adhered to this interpretation, recognizing that the constitutional problems identified in *Purifoy* may be avoided, provided that the contention language is not included in instructions to the jury involving MCL 750.170. See *Mash*, 45 Mich App, at 462-463. More recently, another federal court to consider the statute similarly found it to be overbroad insofar as it infringes on constitutionally protected speech. See *Leonard v Robinson*, 477 F3d 347, 360 (CA 6 2007). In sum, for more than four decades, this Court and federal courts have acknowledged that MCL 750.170's reference to "exciting a contention" unconstitutionally infringes on protected speech by criminalizing the peaceable public expression of ideas, merely because those ideas might be offensive to others.

Today, consistent with the reasoning of these past decisions, we reaffirm *Purifoy*'s central holding.[2] That is, we again recognize that the phrase "exciting a contention" as used in

---

[2] In urging this Court to reach a different conclusion than the numerous cases which have consistently identified the exciting of a "contention" language as repugnant to constitutionally

MCL 750.170 is constitutionally overbroad insofar as it criminalizes the peaceable public expression of ideas, merely because those ideas may be offensive to others. See *Purifoy*, 34 Mich App at 321-322 (opinion of LESINSKI, C.J.), citing *Bachellar*, 397 US at 567. Consequently, the contention language must be excised from the statute in the manner detailed in *Purifoy* and by the three judge panel in *Detroit Metro Welfare Rights Org*, and a conviction under MCL 750.170 premised on "exciting a contention" may not stand.

On the facts of this case, as in *Purifoy*, we cannot discern whether defendant was convicted for creating a "disturbance" or exciting a "contention." The prosecution argued both that defendant had created a disturbance and that she had excited a contention, and the trial court's instructions to the jury included reference to both disturbance and contention. A jury instructed in this manner may well have convicted defendant because it determined that her words and actions, though peaceable, were offensive to others and therefore constituted the exciting of a contention. Because defendant's conviction may rest on an unconstitutional basis, we must reverse and remand for a new trial that shall not involve the "contention" portion of MCL 750.170. See *Purifoy*, 34 Mich App at 321-322 (opinion of LESINSKI, C.J.). See also *Terminiello*, 337 US at 5 (holding reversal of a conviction required where "one part of the statute was unconstitutional and it could not be determined that the defendant was not convicted under that part"); *People v Gilbert*, 55 Mich App 168, 174; 222 NW2d 305 (1974) ("When the defendant stands convicted on one of two theories, one of which is permissible and one of which is not, the inability to say for sure on which the conviction rests demands reversal.").

## IV. RESISTING AND OBSTRUCTING

Recognizing that the trial court's instructions on MCL 750.170 were unconstitutionally overbroad, we are also persuaded that, on the present facts, reversal of defendant's conviction for resisting and obstructing a police officer under MCL 750.81d(1) is also required. To convict defendant for resisting and obstructing a police officer, the prosecution was required to show that: "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." *People v Quinn*, __ Mich App __, __; __ NW2d __ (2014); slip op at 4 (citation omitted). In addition, "the prosecution must establish that the officers' actions were lawful." *People v Moreno*, 491 Mich 38, 51-52; 814 NW2d 624

---

protected speech, the prosecution cites in support to *People v Weinberg*, 6 Mich App 345, 351; 149 NW2d 248 (1967). *Weinberg* has little value in the present case as it did not provide much guidance on the constitutionality of the "contention" language at issue. Instead, *Weinberg* mainly considered whether the defendants in that case—students who interrupted the business of a bank by sitting on the floor in front of the teller's window—had created a "disturbance" within the meaning of the statute. In any event, as a decision of this Court decided before 1990, it does not constitute binding precedent, MCR 7.215(J)(1), and, any persuasive value *Weinberg* might have had was thoroughly undermined by *Purifoy*, which, in light of *Bachellar*, persuasively identified the contention language as overbroad insofar as it plainly could be construed to prohibit the public expression of ideas, merely because those ideas are offensive to others. In short, the prosecution's reliance on *Weinberg* is misplaced.

(2012). In other words, pursuant to *Moreno*, the lawfulness of the arrest was an element of the offense, and it presented a factual question for the jury.[3] *Quinn*, slip op at 4, 6.

For an arrest to be lawful, the police officer making an arrest must have probable cause, either that a felony or misdemeanor was committed by the individual in the officer's presence, or that a felony or specified misdemeanor (i.e., a misdemeanor punishable by imprisonment of more than 92 days) occurred outside the officer's presence and that the individual in question committed the offense. *People v Chapo*, 283 Mich App 360, 366-67; 770 NW2d 68 (2009); MCL 764.15(1). See also *People v Freeman*, 240 Mich App 235, 236; 612 NW2d 824 (2000) ("An arrest is legal if an officer has reasonable cause to believe that a crime was committed by the defendant."). "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *People v Champion*, 452 Mich 92, 115; 549 NW2d 849 (1996).

In this case, as discussed, the jury instructions and the prosecution's theory at trial encompassed the erroneous, overly broad premise that exciting any contention constituted a crime. Given these instructions, the jury may have concluded that the arresting officer lawfully arrested defendant because her peaceful expression of ideas gave offense to her listeners. But, an arrest on this basis would be unlawful because the expression of ideas may not be prohibited merely because those ideas are offensive. See *Leonard*, 477 F3d at 360-361 (recognizing that the mere advocacy of an idea cannot support a conviction and it cannot create probable cause for arrest). Because defendant's conviction for resisting and obstructing a police officer may be premised on resistance of an unlawful arrest, reversal of her conviction, and remand for a new trial, is warranted. See *Gilbert*, 55 Mich App at 174.

Reversed and remanded for a new trial. We do not retain jurisdiction.

/s/ Joel P. Hoekstra
/s/ Amy Ronayne Krause
/s/ William C. Whitbeck

---

[3] On appeal defendant challenges the adequacy of the jury instructions relating to the elements of resisting and obstructing a police officer. Given our conclusion that defendant's conviction under MCL 750.81d(1) must be reversed, we find it unnecessary to address this jury instruction argument. We note, however, that in keeping with *Moreno*, 491 Mich at 51-52, the lawfulness of an officer's arrest is an element of the offense on which the jury must be instructed. See *Quinn*, slip op at 4, 6.