# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
August 4, 2015

Plaintiff-Appellee,

v

No. 321918
Wayne Circuit Court

SOLOMAN HOLMAN,

LC No. 13-007343-FC

Defendant-Appellant.

Before: FORT HOOD, P.J., and SAAD and RIORDAN, JJ.

PER CURIAM.

Defendant appeals his jury trial conviction of assault with intent to do great bodily harm less than murder, MCL 750.84. For the reasons stated below, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

Defendant attacked the victim with a hammer at a mental health treatment facility in Detroit. Before this incident, the facility had banned defendant from its premises because of his frequent and public drunkenness, and penchant for harassing other patients and workers. Nonetheless, defendant approached the center sometime during the afternoon of July 8, 2013. The victim, a patient who also acted as a voluntary employee of the facility, told a security guard that defendant was on the property. Defendant left the building after the security guard asked him to do so.

Several hours later, in the early evening, defendant returned to the treatment center and sat on the hood of an employee's car outside the building. The victim, who had just left the facility, saw defendant and attempted to get back inside, but the door had locked behind him. As defendant came toward the victim, the victim broke off a piece of wood from a pallet to defend himself, just as another employee opened the door to leave the building. According to the employee, defendant told the victim "I should f**k you up," and he proceeded to attack the victim, by pulling a hammer from his pants and moving quickly toward the victim.[1] The victim

---

[1] Immediately afterward, the employee shut the door and retreated inside the building.

-1-

suffered injuries to his arm and head from defendant's assault and required 14 stitches at a local hospital.

Thereafter, the police arrested defendant and the prosecution charged him with, among other things, assault with intent to commit great bodily harm less than murder, pursuant to MCL 750.84. Defendant requested a jury trial, and the Wayne Circuit Court empaneled a jury to hear his case. At trial, the jury heard testimony from the victim, the aforementioned treatment center employee, the doctor who treated the victim, and defendant himself. The victim and employee testified to the above. The victim's account of defendant's assault was further supported by the doctor, who explained that the victim's injuries were consistent with being hit with a hammer, or attempts to avoid being hit with a hammer. The doctor stressed that hammer blows are extremely dangerous and potentially lethal.

Defendant's version of the events of July 8, 2013 differs from the victim's and the employee's. He testified that he visited the center on that date so he could speak with its director about lifting the ban on his presence in the facility. According to defendant, the victim confronted him during his evening visit and told him: "B**ch, I'll meet you in the back." Defendant believed it would be best to fight the victim, despite his knowledge that the victim had served a prison term for murder.[2] Outside the back of the building, defendant claimed that the victim swung a wood pallet at him, and he picked up a hammer lying on the ground to defend

---

[2] The victim committed murder in a 1992 shooting, and pled guilty to second-degree murder and felony firearm. At trial, defense counsel voiced his intention to ask the victim about this prior conviction during cross-examination. The prosecutor argued that MRE 609 barred defendant from using the prior conviction "for purposes of attacking the credibility of [the victim]" because "evidence that [the victim] had been convicted of a crime" could not be admitted into evidence "unless it's a crime involving theft or dishonesty and occurred within 10 years." The prosecutor noted that the victim had committed the crime well over 10 years ago, and that the murder did not involve truthfulness, theft, or dishonesty—meaning that MRE 609 precluded defendant from using the prior conviction to impeach the victim's credibility on cross-examination. However, the prosecutor explained that "the People [would] happily stipulate" to the victim's guilty plea, conviction, and sentence, so that defendant—who might have known of defendant's prior conviction for murder—could explain his state of mind during the altercation.

Defense counsel was unsatisfied with the prosecution's offer, and claimed that the victim's conviction was admissible under "self-defense law," and MRE 404(a). He also asserted that the conviction "adds support . . . for our theory of the victim's violent character from the past of his conviction for second-degree murder and felony firearm." The prosecutor responded that using the conviction in this way rendered it inadmissible.

The trial court agreed with the prosecutor and held that when defendant took the stand, the prosecution would stipulate to his prior conviction and sentence for murder, which would "allow the jury to take into consideration the defendant's state of mind at the time that he was acting and what his testimony is with respect to the way he acts." It barred defense counsel from referencing the victim's prior conviction in his cross-examination of the victim under MRE 609.

-2-

himself. The confrontation devolved into a brawl, which supposedly ended when the victim ran away. Defendant left the scene and did not inform the police of the victim's purported attack.

The jury convicted defendant of assault with intent to commit great bodily harm less than murder. On appeal, he asserts that the trial court erred when it held that the prosecution exercised due diligence in its attempt to produce Daniel Sturdivant, a security guard at the mental health center, as a witness.[3] He also raises three issues that he has failed to preserve for appellate review: (1) whether the trial court's limitation on the admission of victim's criminal history as evidence violated defendant's right to present a defense and MRE 404(b); (2) whether the trial court properly instructed the jury[4]; and (3) whether his mandatory sentence is cruel and unusual punishment.[5] Because these claims are frivolous—and presented in a disjointed, unorganized, and unclear fashion in defendant's brief on appeal—we limit our discussion in the body of the opinion to defendant's argument regarding the victim's criminal history.

## II. STANDARD OF REVIEW

---

[3] Defendant's contention on this score is simply a misrepresentation of reality. The prosecution actually went to great lengths to secure Sturdivant's testimony at trial. The prosecutor's investigator testified to an extensive search for Sturdivant, in which he: (1) looked for Sturdivant in several government databases; (2) visited the Sturdivant's last known address; (3) spoke with former neighbors and Sturdivant's former roommate about the witness's whereabouts; (4) visited two prior addresses listed as places where Sturdivant had lived; and (5) found and visited Sturdivant's mother to speak with her about the witness's location. Accordingly, the prosecution exercised the requisite "due diligence" to produce Sturdivant at trial. *People v Eccles*, 260 Mich App 379, 388; 677 NW2d 76 (2004).

[4] Defendant did not object to the trial court's jury instructions, and his trial attorney also expressed satisfaction with the instructions. Accordingly, defendant's argument on the court's supposed instructional error is waived. *People v Kowalski*, 489 Mich 488, 503; 803 NW2d 200 (2011). In any event, defendant has failed to show any error in the trial court's instructions. The jury's guilty verdict for assault with intent to do great bodily harm less than murder is *not* inconsistent with its not guilty verdict for felonious assault, because the two charges require proof of different facts. *People v Strawther*, 480 Mich 900; 739 NW2d 82 (2007).

[5] Considering the gravity of defendant's offense and his extensive criminal history, defendant fails to demonstrate that his sentence was cruel or unusual. See *People v Lee*, 243 Mich App 163, 187; 622 NW2d 71 (2000). Defendant is a career criminal, and his prior terms in prison have apparently done little to rehabilitate him. He has been convicted of at least three other felonies, which places him within the remit of MCL 769.12(1)(a)'s 25 year mandatory minimum sentence. And Michigan courts have explicitly held prior versions of Michigan's repeat offender statutes to be constitutional. See *People v Curry*, 142 Mich App 724, 732; 371 NW2d 854 (1985) and *People v Potts*, 55 Mich App 622, 638-639; 223 NW2d 96 (1974). Defendant's argument to the contrary is unavailing, as is his citation to Wikipedia to compare his sentence to the penalty imposed for the same crime in other states.

A trial court's decision to admit evidence is usually reviewed for an abuse of discretion. *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). Questions of constitutional law, such as a defendant's right to due process, are generally reviewed de novo. *People v Gaines*, 306 Mich App 289, 304; 856 NW2d 222 (2014).

Here, defendant did not argue at trial that the trial court's limitation on the admission of evidence regarding the victim's prior conviction violated his right to due process or MRE 404(b). Accordingly, his argument is unpreserved, and we review the trial court's holding for plain error that affected defendant's substantial rights. *People v Vandenberg*, 307 Mich App 57, 61; 859 NW2d 229 (2014). "Under this standard, defendant bears the burden of demonstrating a 'clear or obvious' error and that this error affected [his] substantial rights." *Id*.

An error in the admission or exclusion of evidence is presumed to be harmless, and will be reversed only if "after an examination of the entire cause, it shall affirmatively appear that it is more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999).

## III. ANALYSIS

Though a defendant has a constitutional right to present his defense, his right to do so is not absolute. *People v Unger*, 278 Mich App 210, 250; 749 NW2d 272 (2008). "A defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id*. (citations omitted). Evidentiary rules that give trial courts broad latitude in excluding evidence from criminal trials "do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve." *Id*. (citations omitted).

One such evidentiary rule is MRE 609, which reads, in relevant part:

(a) General Rule. For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall not be admitted unless the evidence has been elicited from the witness or established by public record during cross-examination, and

(1) the crime contained an element of dishonesty or false statement, or (

2) the crime contained an element of theft, and

   (A) the crime was punishable by imprisonment in excess of one year or death under the law under which the witness was convicted, and

   (B) the court determines that the evidence has significant probative value on the issue of credibility and, if the witness is the defendant in a criminal trial, the court further determines that the probative value of the evidence outweighs its prejudicial effect.

\* \* \*

(c) Time Limit.  Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date.

Here, defendant unconvincingly argues that the trial court abused its discretion and violated his right to due process when it prevented his trial attorney from questioning the victim about the victim's prior conviction for murder.  In fact, the trial court properly limited admission of the victim's criminal history under MRE 609, because: (1) the victim committed the crime in 1992; and (2) he was discharged from parole in 2013.  Though defense counsel claimed at trial that he did not seek to question the victim about the murder conviction for purposes of impeaching the victim, it is obvious from the record and defense counsel's other statements that counsel sought to do so to: (1) make the victim less trustworthy in the eyes of the jury (in other words, impeach the victim); and (2) establish that the victim had a propensity toward violence.  As the prosecution noted, neither approach is permitted under MRE 609 or MRE 404(b), which expressly prohibits the use of "other acts" evidence "to prove the character of a person in order to show action in conformity therewith."  MRE 404(b)(1); see also *People v Uribe*, ___ Mich App ___; ___ NW2d ___, 2015 WL 2214706.[6]

In any event, defendant conveniently overlooks the fact that the jury *was* informed of defendant's prior conviction for murder, because the trial court ordered the prosecution to stipulate to this fact when defendant took the stand.  In so doing, the trial court permitted defendant to explain his state of mind during his brawl with the victim—in other words, present the defense he wanted to present, and which he now asserts he was prevented from doing—with reference to the fact that the victim was a convicted murderer.

Moreover, were we nonetheless to find that the trial court abused its discretion in preventing defense counsel from questioning the victim about his prior murder conviction, defendant has utterly failed to show that "it is more probable than not" that the victim's testimony on his murder convictions would have convinced the jury that defendant was not guilty.  *Lukity*, 460 Mich at 495-496.

And even were we to believe the entirety of defendant's version of events—which the jury obviously did not, despite the fact that it knew of the victim's prior conviction for murder— defendant's assertion that he acted in self-defense is not possible as a matter of law.  Again, defendant willingly accepted a challenge to meet the victim behind the building and fight, and

---

[6] Defendant, for the first time on appeal, claims, without offering any relevant legal support, that the trial court should have permitted defendant's trial attorney to cross-examine the victim on his prior murder conviction under MRE 404(b), as evidence of the victim's supposed "system in dealing with a confrontation."  Defendant does not explain how the victim's behavior in this altercation is similar to the shooting he committed in 1992.  Rather, he simply argues that defendant's prior conviction demonstrates that he has a character for violent behavior.  As the prosecutor noted, use of a prior conviction in such a way is inadmissible under MRE 404(b).  See *People v Nichols*, 125 Mich App 216, 220; 335 NW2d 665 (1983).

admitted that he failed to retreat during the confrontation, despite having several opportunities to do so. Instead, defendant stated that he picked up a hammer to use against the victim and chased the victim when he fled.

Defendant's appeal is therefore without merit, and we affirm his conviction.

/s/ Karen M. Fort Hood
/s/ Henry William Saad
/s/ Michael J. Riordan