*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
January 21, 2021

Plaintiff-Appellee,

v

No. 350250
Oakland Circuit Court

JODY RICE-WHITE,

LC No. 2018-268595-FH

Defendant-Appellant.

Before: LETICA, P.J., and GLEICHER and O'BRIEN, JJ.

PER CURIAM.

A jury convicted Jody Rice-White of assaulting, resisting, or obstructing a police officer, a felony under MCL 750.81d(1), and disturbing the peace, a misdemeanor under MCL 750.170. During the trial, the prosecution presented video footage from several security cameras in the courthouse where the charged events unfolded. Rice-White contends that additional footage was not produced; the prosecution contends that this footage does not exist. Rice-White asserts that she is entitled to a new trial with the presentation of the subject footage into evidence. She also challenges the sufficiency of the evidence supporting her disturbing-the-peace conviction and the instructions read to the jury on that charge. We discern no error and affirm.

## I. BACKGROUND

On the morning of September 13, 2018, Jody Rice-White sat in the audience of Oakland County Probate Judge Daniel A. O'Brien's courtroom. Her husband, Jeff White, stood at the podium, discussing his father's guardianship and estate matters with the judge. Judge O'Brien opined that Rice-White disturbed the proceedings by gesturing in frustration. The judge threatened to hold her in contempt and Rice-White left the courtroom.

Rice-White walked quickly from the courtroom to the nearby Juvenile Court desk. The desk clerk, Roberta Dunn, testified that Rice-White "was yelling" or speaking in a "[r]aised voice," "saying that the judge was threatening her and she needed sheriff deputies called." Dunn did not act because Rice-White did not stop at the desk, proceeding instead to the probate court clerk's office.

-1-

When Rice-White reached the probate division she was visibly upset and asked to speak with the probate administrator to make a complaint about Judge O'Brien. Kelly Pena and Melanie Delrosario informed Rice-White that the probate administrator was not available. Rice-White became more upset and began to yell and flail her arms. The clerks could not calm Rice-White and worried that she might "violate[]" their "personal space." Accordingly, Pena pressed the silent alarm. Before deputies arrived, Rice-White left the room and headed toward the public restroom. The restroom is located by the Juvenile Court desk and Dunn could hear Rice-White crying inside.

As the deputies walked back to their stations from the probate division, they could hear Rice-White screaming and crying in the restroom. Deputy Shannon Moore entered the restroom and attempted to calm her down. Deputy Moore testified that that Rice-White was sitting on the floor in front of the stalls, holding her face in her hands. Rice-White was crying and upset because, she claimed, "the fucking judge is trying to arrest me" or the judge was "[f]ucking trying to lock me up." After several minutes, Deputy Moore convinced Rice-White to exit the restroom where they encountered her husband and a few sheriff's deputies.

In the hallway, Rice-White again became agitated, "flailing her hands and . . . talking loud." Deputies Nicholas Kaczor and Paul Thieme advised Rice-White that she was causing a disruption. They gave her the option to calm down or leave the courthouse. The deputies also warned Rice-White that her continued disruptive behavior could lead to a ticket or arrest. Rice-White argued with the deputies for a few minutes before agreeing to be escorted out of the building. During this encounter, other people were in the hallway. Deputy Moore testified that these individuals "were looking."

But Rice-White did not quietly make her way out of the building. Dunn heard Rice-White yelling as she walked down the hall flanked by deputies. Deputies Kaczor, Thieme, and Moore all testified that Rice-White continued to yell accusations of corruption as they walked. When the group reached the doorways to courtrooms 1A and 1B, all semblance of order broke down. Deputy Thieme told Rice-White that he was going to issue a citation or place her under arrest. Rice-White started to move away and Deputy Thieme attempted to take her arm. Rice-White responded by falling to the floor along the edge of the hallway. She screamed that the deputies were trying to rape and beat her. Two deputies lifted Rice-White by her arms and she raised her legs, refusing to walk. When Rice-White put her legs down, the deputies placed her under arrest and steered her toward the security office.

Jeff White described a very different version of events. He asserted that Rice-White agreed to leave the courthouse and was quietly walking down the hall when Deputy Kaczor "overzealous[ly]" rushed her and knocked her down.

## II. DISTURBING THE PEACE

Rice-White moved for a directed verdict at the close of the prosecution's case-in-chief. The trial court denied the motion. Rice-White now contends that the court erred as the prosecution failed to present evidence that someone other than a peace officer was disturbed by her conduct. We review the court's decision de novo, viewing the evidence "in the light most favorable to the prosecutor," to determine if that evidence "could persuade a rational trier of fact that the essential

elements of the crime charged were proved beyond a reasonable doubt." *People v Aldrich*, 246 Mich App 101, 122; 631 NW2d 67 (2001).

MCL 750.170 governs disturbing the peace, in relevant part, as follows: "[a]ny person who shall make or excite any disturbance . . . in any . . . public building . . . or other public meeting where citizens are peaceably and lawfully assembled, shall be guilty of a misdemeanor."[1] This Court first defined "disturbance" as used in this statute in *People v Weinburg*, 6 Mich App 345, 351; 149 NW2d 248 (1967):

> In *Black's Law Dictionary* (4th Ed, 1951), p 563, a disturbance is defined as:
>
> "Any act causing annoyance, disquiet, agitation, or derangement to another, or interrupting his peace, or interfering with him in the pursuit of a lawful and appropriate occupation or contrary to the usages of a sort of meeting and class of persons assembled that interferes with its due progress or irritates the assembly in whole or in part."
>
> From the above definition it is clear that the statutory prohibition, framed in the disjunctive, embraces more than actual or threatened violence. . . . A disturbance, which is something less than threats of violence, is an interruption of peace and quiet; a violation of public order and decorum; or an interference with or hindrance of one in pursuit of his lawful right or occupation.

See also *People v Mash*, 45 Mich App 459, 462-463; 206 NW2d 767 (1973).

A jury could determine from the evidence presented that Rice-White had disturbed the peace. The deputies and court employees testified that Rice-White caused a disruption in a public courthouse during business hours and interfered with the pursuit of their lawful occupations. Rice-White's crying and yelling in the bathroom could be heard by Dunn and visitors near the Juvenile Court desk. Pena and Delrosario were unable to continue their work during Rice-White's visit to their office. Rice-White's behavior in the seats outside the bathroom led to stares from other courthouse visitors. Although the prosecution did not present evidence from occupants in courtrooms 1A and 1B, the jury could reasonably infer that Rice-White's screams that the deputies

---

[1] The statute provides in full:

> Any person who shall make or excite any disturbance *or contention* in any tavern, store or grocery, manufacturing establishment or any other business place or in any street, lane, alley, highway, public building, grounds or park, or at any election or other public meeting where citizens are peaceably and lawfully assembled, shall be guilty of a misdemeanor. [Emphasis added.]

In *People v Vandenberg*, 307 Mich App 57, 67; 859 NW2d 229 (2014), this Court noted that the statute's criminalization of exciting a "contention" had long been declared "unconstitutionally overbroad insofar as it criminalizes the peaceable public expression of ideas, merely because those ideas may be offensive to others." The remainder of the statute was saved by excising this language. *Id*.

were raping and beating her disturbed the peace in the otherwise quiet court building where others were trying to conduct their business.

Rice-White contends that the evidence only proved that the deputies, not the public, were disturbed by her behavior. This is simply not true. As noted, Dunn testified that she heard Rice-White screaming and crying in the bathroom. There were other people in the lobby at the time. Pena testified that she tried to calm Rice-White in the probate division "that way it was not disrupting any other business that was happening," but was unable to do so. Pena further described that she would have been unable to assist any other customers given Rice-White's "state." The evidence demonstrated that Rice-White made a disturbance in a public space. She interrupted the peace and quiet of the courthouse, violated the courthouse's decorum, and interrupted the work of at least three clerks. Given this evidence, we need not yet delve into Rice-White's claim that the statute requires the disturbance of someone other than the responding officers.

Rice-White alternatively contends that she was wrongfully arrested for the misdemeanor of disturbing the peace because she did not cause a disturbance in the presence of the arresting officer.

"For an arrest to be lawful, the police officer making the arrest must have probable cause, either that a felony or misdemeanor was committed by the individual in the officer's presence, or that a felony or specified misdemeanor (i.e., a misdemeanor punishable by imprisonment for more than 92 days) occurred outside the officer's presence and that the individual in question committed the offense." *People v Vandenberg*, 307 Mich App 57, 63-67; 859 NW2d 229 (2014). Disturbing the peace is an unspecified misdemeanor punishable by imprisonment for not more than 90 days or a fine of not more than $500, or both. MCL 750.504. Thus, to be arrested for disturbing the peace, the arresting officer must have probable cause that the misdemeanor was committed in the officer's presence. MCL 764.15(1)(a) and (d); *Vandenberg*, 307 Mich App at 69. "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed." *Vandenberg*, 307 Mich App at 69 (quotation marks and citations omitted).

Contrary to Rice-White's insistence, she did violate the statute in the presence of the arresting deputies. Deputy Thieme was nearby while Rice-White yelled profanities and loudly cried inside the public restroom. Multiple deputies were present while Rice-White continued to interfere with the business of others as she yelled and argued in the seats outside the bathroom. And multiple deputies observed as Rice-White threw herself on the floor screaming accusations that the deputies were raping and beating her. The record evidence suffices to support Rice-White's conviction.

III. JURY INSTRUCTIONS

Rice-White further challenges the instruction given to the jury on the disturbing-the-peace charge. Specifically, she contends that the court failed to instruct the jury that someone other than a police officer must have been disturbed by her conduct. Defense counsel unsuccessfully requested this special instruction. The court instructed the jury:

The Defendant is charged in count two with the crime of disturbing the peace. To prove this charge, the prosecutor must prove each of the following elements, beyond a reasonable doubt. First, that the Defendant made or created a disturbance. Second, that the Defendant did so in a public building.

We review for an abuse of discretion the trial court's decision. *People v Armstrong*, 305 Mich App 230, 239; 851 NW2d 856 (2014). In doing so, we consider "the instructions as a whole to determine whether the issues to be tried were adequately presented to the jury." *Id*. The court's instructions "must include all elements of the charged crime, and must not exclude from the jury's consideration of material issues, defenses, or theories if there is evidence to support them." *Id*. at 240 (quotation marks and citations omitted). A trial court's failure to instruct a jury regarding an element of an offense constitutes an error subject to automatic reversal. *People v Duncan*, 462 Mich 47, 52-53; 610 NW2d 551 (2000).

Nothing in the language of MCL 750.170 suggests that persons other than law enforcement officers must be affected when a defendant "make[s] or excite[s] any disturbance" in a public place. Rice-White cites *People v O'Keefe*, 218 Mich 1; 187 NW 282 (1922), for this proposition; however, *O'Keefe* was based on a prior version of the statute criminalizing disturbing the peace. See *id*. at 4. And *O'Keefe* does not actually stand for the proposition that persons other than law enforcement must be disturbed. Rather, the events in *O'Keefe* began when the defendant and another man tried to pick the pocket of a third man standing in a crowd waiting for the streetcar. A police officer observed the incident and attempted to arrest the defendant. The defendant ran away, causing the charged disturbance. *Id*. The Supreme Court stated, "In the language of the statute, there must be a 'disturbance or contention.' It does not appear that any person other than the officer was 'disturbed' or that there was any 'contention' until he sought to make the arrest." *Id*. This was not an assessment of the statutory elements; it was commentary that the prosecution filed the wrong charges against the defendant. The court implied that larceny and resisting arrest fit the situation.

Ultimately, the instruction read to the jury covered the elements of the charged offense and Rice-White is not entitled to relief.

IV. FAILURE TO PRODUCE VIDEO EVIDENCE

At trial, the prosecution presented footage from four separate security cameras in the courthouse. The first showed the juvenile court desk area. A second showed a different angle of that desk and a door into a security office. A third showed an area near the door to the probate division and the elevators. A fourth showed a length of hallway. The footage lacked sound. And none of the angles showed the probate division desk, the area near the bathroom where deputies tried to calm Rice-White, or the section of hallway where Rice-White fell to the floor. Rice-White contends that there exists an additional 10 minutes of footage and that the prosecution violated her right to due process by withholding it.

Rice-White filed a request for the "missing" footage under the Freedom of Information Act. The Oakland County Sheriff's Department denied the request because "there are no records responsive to this request." At the pretrial probable cause hearing, Rice-White renewed her request. Deputy Thieme testified that he had personally searched for and downloaded the

applicable footage from the court's video security system and located all available angles showing Rice-White's movements. And at trial, the deputies testified that additional cameras had since been brought online at the courthouse, but were not yet recording on the day in question.

Due process demands "that the prosecution disclose evidence in its possession that is exculpatory and material, regardless of whether defendant requests the evidence." *People v Jackson*, 292 Mich App 583, 590-591; 808 NW2d 541 (2011), citing *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963). "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 US at 87. "To establish materiality, a defendant must show that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Chenault*, 495 Mich 142, 150; 845 NW2d 731 (2014) (quotation marks and citation omitted). However, for a *Brady* violation to occur, the subject evidence must actually exist.

Here, Detective Thieme admitted that there existed minimal additional footage depicting the detectives moving about the courthouse. That footage was not material as its presentation could have no impact on the outcome of Rice-White's trial. Those images would neither prove nor disprove that Rice-White disturbed the peace. Moreover, there is no evidence that any camera captured footage inside the probate division office, near the bathroom, or farther down the hallway near courtrooms 1A and 1B. Absent existing additional material evidence, we cannot conclude that the prosecution violated Rice-White's rights.

We affirm.

/s/ Anica Letica
/s/ Elizabeth L. Gleicher
/s/ Colleen A. O'Brien