*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

BENJAMIN SCOTT URBANSKI,

       Defendant-Appellant.

FOR PUBLICATION
August 31, 2023

No. 359011
Allegan Circuit Court
LC No. 2019-022856-FH

Before: GLEICHER, C.J., and RICK and MALDONADO, JJ.

GLEICHER, C.J. (*concurring in part and dissenting in part*).

The majority correctly concludes that the prosecution produced insufficient evidence that Benjamin Urbanski's blood alcohol level exceeded 0.08 grams per 100 milliliters of blood, one of the theories underlying his conviction. I further concur that defense counsel performed ineffectively by failing to object to a jury instruction permitting conviction on that theory. I part ways with the majority, however, regarding prejudice. Despite counsel's error, sufficient admissible evidence supported Urbanski's conviction on the alternative theory that he drove while under the influence of alcoholic liquor. For this reason, I would affirm his conviction.

The prosecution charged Urbanski with a violation of MCL 257.625(1), which provides in relevant part:

A person, whether licensed or not, shall not operate a vehicle on a highway or other place open to the general public or generally accessible to motor vehicles, including an area designated for the parking of vehicles, within this state if the person is operating while intoxicated. As used in this section, "operating while intoxicated" means any of the following:

(a) The person is under the influence of alcoholic liquor, a controlled substance, or other intoxicating substance or a combination of alcoholic liquor, a controlled substance, or other intoxicating substance.

(b) The person has an alcohol content of 0.08 grams or more per 100 milliliters of blood . . . .

Under this statute, the prosecution may advance alternate theories for conviction: one based on driving under the influence and the other grounded in the result of a blood test. In my view, a conviction may be upheld if the trial evidence supports either theory.

Urbanski's blood was drawn about two hours after the traffic stop and revealed a blood alcohol level of only 0.064. MCL 257.625a(6)(a) provides that "[t]he amount of alcohol . . . in a driver's blood . . . at the time alleged as shown by chemical analysis of the person's blood . . . is admissible into evidence in any civil or criminal proceeding and *is presumed to be the same as at the time the person operated the vehicle*." [Emphasis added.] The prosecution failed to present any evidence rebutting the presumption that Urbanski's BAC was under the legal limit at the time of the traffic stop.

The prosecution's failure to introduce evidence rebutting this presumption should have triggered a dismissal of the alternative ground for conviction set forth in MCL 257.625(1)(b). In a civil context, our Supreme Court has explained that:

> the function of a presumption is solely to place the burden of producing evidence on the opposing party. It is a procedural device which allows a person relying on the presumption to avoid a directed verdict, and it permits that person a directed verdict if the opposing party fails to introduce evidence rebutting the presumption. [*Widmayer v Leonard*, 422 Mich 280, 289; 373 NW2d 538 (1985).]

MRE 301, which applies in civil cases, is consistent with *Widmayer*.

MRE 302 concerns presumptions in criminal cases, and provides:

(a) Scope. In criminal cases, presumptions against an accused, recognized at common law or created by statute, including statutory provisions that certain facts are prima facie evidence of other facts or of guilt, are governed by this rule.

(b) Instructing the Jury. Whenever the existence of a presumed fact against an accused is submitted to the jury, the court shall instruct the jury that it may, but need not, infer the existence of the presumed fact from the basic facts and that the prosecution still bears the burden of proof beyond a reasonable doubt of all the elements of the offense.

Here, the presumption contained in MCL 257.625a(6)(a) operated *in favor* of the accused. Urbanski's BAC was 0.064 grams of alcohol per 100 milliliters of blood. To prove that he drove with an alcohol content of 0.08 grams or more per 100 milliliters of blood, the prosecution was required to rebut the presumption that his blood level was 0.064 when stopped. The prosecution produced no evidence whatsoever in this regard. Absent evidence rebutting the presumption, the *Widmayer* analysis applied and Urbanski was entitled to a directed verdict of acquittal under subsection (1)(b), which his counsel ineffectively failed to bring.

But a violation of MCL 257.625 may be established by either of two theories of liability: that an accused operated a vehicle with a blood alcohol level of 0.08 grams or more per 100 milliliters of blood, MCL 257.625(1)(b), or that he operated a vehicle "under the influence of alcoholic liquor." MCL 257.625(1)(a). Here, the evidence supported conviction under the second theory. As the majority recites, the arresting officer detected an odor of intoxicants and observed that Urbanski's eyes were bloodshot and his speech slurred. Urbanski admitted to having three or four drinks before driving, and was traveling at a high rate of speed before he was stopped. These facts more than sufficed to prove that Urbanski was "under the influence" as required by MCL 257.625(1)(a).

The majority holds that defense counsel's failure to object to the submission of the blood alcohol theory to the jury prejudiced him and requires a new trial. Citing *People v Vandenberg*, 307 Mich App 57, 68; 859 NW2d 229 (2014), the majority observes that "[w]hen the defendant stands convicted on one of two theories, one of which is permissible and one of which is not, the inability to say for sure on which the conviction rests demands reversal." I respectfully disagree with the application of *Vandenberg* in this context, and posit that a new trial here is legally inappropriate.

In *Vandenberg*, the defendant was convicted of resisting and obstructing a police officer, MCL 780.81d(1), and "making or exciting any disturbance or contention," MCL 750.170. *Vandenburg*, 307 Mich App at 58. This Court held that the phrase "exciting a contention" was "unconstitutionally overbroad" because it criminalized "the peaceable public expression of ideas" that "may be offensive to others." *Id*. at 67. We excised the "contention" language from MCL 750.170, reversed the defendant's conviction under that statute, and remanded for a new trial that did not involve the "contention" language. *Id*. at 67-68. We explained why a new trial is required as follows:

> The prosecutor argued both that defendant had created a disturbance and that she had excited a contention, and the trial court's instructions to the jury included reference to both a disturbance and a contention. A jury instructed in this manner may well have convicted defendant because it determined that her words and actions, though peaceable, were offensive to others and therefore constituted the exciting of a contention. Because defendant's conviction may rest on an unconstitutional basis, we must reverse and remand for a new trial that shall not involve the "contention" portion of MCL 750.170. [*Vandenburg*, 307 Mich App at 67-68.]

In my view, *Vandenberg* does not compel the reversal of Urbanski's conviction. In *Vandenberg*, the defendant's conviction potentially rested on the jury's enforcement of an *unconstitutional* law. Here, the challenged verdict involves an *evidentiary* shortcoming in the prosecution's case, and not a legal one.

The evidence/law distinction was at the center of the dispute in *Griffin v United States,* 502 US 46; 112 S Ct 466; 116 L Ed 2d 371 (1991), in which the United States Supreme Court held that the Due Process Clause of the United States Constitution does not mandate that all alternative theories of liability be proven beyond a reasonable doubt as long as sufficient evidence supports one of the theories. The jury in *Griffin* rendered a general guilty verdict under a charge that the

-3-

defendant had conspired to defraud the federal government in two different and distinct ways. The evidence at the trial failed to support one of the two alleged objects of the conspiracy. *Id*. at 48. The trial court instructed the jury that it could convict the defendant if it found that she had "participated in *either one* of the two objects of the conspiracy." *Id*. The defendant sought reversal, contending that it was impossible to determine whether the jury's conviction was based on the theory lacking sufficient supporting evidence.

The United States Supreme Court forcefully rejected that argument, holding that when a jury returns a general verdict a conviction should be affirmed if the evidence is sufficient to convict on one theory although insufficient to convict on another. *Id*. at 57-58. The Court explicitly distinguished the situation "where a provision of the Constitution forbids conviction on a particular ground," *id*. at 53, which *Vandenberg* epitomizes. When a defendant is convicted under a theory that is contrary to the law, the Supreme Court explained, due process "is violated by a general verdict that may have rested on that ground." *Id*. An evidentiary insufficiency is different, the Supreme Court elucidated, because

> [j]urors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors *are* well equipped to analyze the evidence[.] [*Id*. at 59.]

The Supreme Court approvingly cited a Seventh Circuit Court of Appeals case relaying the same message:

> "It is one thing to negate a verdict that, while supported by evidence, may have been based on an erroneous view of the law; it is another to do so merely on the chance—remote, it seems to us—that the jury convicted on a ground that was not supported by adequate evidence when there existed alternative grounds for which the evidence was sufficient." [Id. at 59-60, quoting *United States v Townsend*, 924 F2d 1385, 1414 (CA 7, 1991).]

Citing several unpublished and nonprecedential cases, the majority insists that *Griffin* conflicts with binding Michigan precedent. The majority ignores *People v Chelmicki*, 305 Mich App 58, 65 n 1; 850 NW2d 612 (2014), which appears to have accepted and applied *Griffin*, albeit not entirely clearly. More importantly, by rejecting the application of *Griffin* in this case, the majority loses sight of the standards governing an evaluation of prejudice under *Strickland v Washington*, 466 US 668, 695; 104 S Ct 2052; 80 L Ed 2d 674 (1984). In *Strickland*, the United States Supreme Court premised the prejudice analysis on the assumption "that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Id*. This suggests that when an alternative theory is entirely without evidentiary support, a court may assume that the jury relied on the theory for which proof beyond a reasonable doubt was introduced. And there is more. *Strickland* emphasized that when assessing prejudice, a court must

consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors. [*Id.* at 695-696.]

The majority sends this case back to the trial court for a new trial despite overwhelming evidence of Urbanski's guilt under MCL 257.625(1). Respectfully, I cannot square this decision with *Strickland*'s requirement that a defendant demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Despite the jury's contemplation of an improper theory of Urbanski's liability and counsel's failure to remove this theory from the jury's consideration, the verdict is legally and evidentially supportable on the "under the influence" ground. No reasonable probability exists that counsel's errors would have led to a different result on the alternative theory of guilt. On that basis, I would affirm.

/s/ Elizabeth L. Gleicher