*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 13, 2023

Plaintiff-Appellee,

v

No. 361280
Monroe Circuit Court
LC No. 2020-245897-FH

TINA MARIE CARROLL,

Defendant-Appellant.

Before: PATEL, P.J., and BOONSTRA and RICK, JJ.

PER CURIAM.

Defendant appeals by delayed leave granted[1] her jury trial convictions of two counts of resisting and obstructing a police officer, MCL 750.81d(1), and one count of disturbing the peace, MCL 750.170, for which she was sentenced to three days in jail (time served) and 24 months' probation. Defendant argues that there was insufficient evidence to support her convictions, that the jury instructions were constitutionally inadequate, and she received ineffective assistance of counsel because counsel did not to seek to correct that error. Finding no error warranting reversal, we affirm.

## I. BACKGROUND

Late in the evening on June 6, 2019, defendant's neighbor was concerned that defendant was experiencing a medical emergency. The neighbor borrowed another neighbor's phone to call 911:

I have . . . my neighbor. Her name is Tina. She was sitting over by my apartment and I was talking to her and she reeks of alcohol. And then all of a sudden when I was walking her home, she was stumbling and she normally doesn't drink. And I

---

[1] *People v Carroll*, unpublished order of the Court of Appeals, entered September 12, 2022 (Docket No. 361280).

-1-

got her into her house safely. And then all of a sudden she said that she could not see and then she started getting very combative.

Police and medical personnel were dispatched to the apartment complex for a "medical run" for a "female who is not alert." When Corporal Flora and Officer Lamour responded to the scene, they encountered two individuals: defendant and the neighbor who called 911. Both officers were in full uniform, arrived in two fully marked patrol vehicles, and identified themselves when they first encountered defendant. The officers were invited into defendant's apartment. The officers told defendant that they had been dispatched to check on her well-being based on her neighbor's call to 911. Defendant became upset with the neighbor, which prompted Flora to bring the neighbor away from the apartment to obtain information while Lamour remained with defendant in her apartment. The neighbor reported that she believed defendant was having some type of medical emergency such as a diabetic issue, heart attack, or stroke. The neighbor described defendant's speech as slurred and stated that she was not making any sense when she was talking. The neighbor also reported that defendant had been drinking.

When Flora returned to defendant's apartment, defendant was outside on the front porch shared with other residents.[2] She was loud, belligerent, and using profanities as she argued with Lamour and shouted at the medical personnel. She instructed the officers to leave. But the officers explained that they could not leave because there was a call that she was experiencing a possible medical emergency. Lamour described defendant as "belligerent" and stated that he "could tell there was somethin' else going on there, wasn't quite sure, but she was yelling and screaming at us."

One of the paramedics testified that defendant was "not in her right mind" when they arrived and encountered her on the front porch. He stated defendant "was rolling around on the ground, screaming, cussing, just not acting like somebody that you run into every day [sic]." Defendant refused to answer any of the paramedics' questions as they attempted to perform their assessment.[3] Instead, she cussed and responded with "things that were obviously not answers to the questions." Given the facts and circumstances, the paramedics generally would have transported defendant to the hospital for further assessment. But, based on their training, the paramedics opined that defendant was not a danger to herself or others and would not suffer any medical harm if she remained home. Because this was a deviation from protocol, the paramedics contacted a doctor at the hospital to obtain his opinion on whether defendant needed to be evaluated at the hospital. The paramedics did not indicate to the officers that they did not think that defendant

---

[2] Lamour testified that the incident started inside the apartment, but moved from outside to inside the apartment multiple times.

[3] The paramedic explained that patients can refuse medical treatment if they are "alert and oriented times four." This assessment is typically performed by asking the following questions to determine whether a person is able to make his or her own medical decisions: (1) "what year is it," (2) "how many quarters are in a dollar," (3) "who's the president," and (4) where are you at[?]" If patients answer all four questions appropriately, they are considered to be alert, oriented, and able to make their own decisions.

was suffering from a medical issue; they simply indicated that they were waiting to speak with the doctor to obtain his opinion whether defendant should be transported to the hospital.[4]

While the paramedics were waiting on medical clearance from the doctor, defendant walked back into her apartment. She continued to yell at the officers and instructed them to leave. The officers exited defendant's apartment, but Lamour kept his foot and a small portion of his lower leg in the doorway to ensure that medical personnel could get into the apartment to render aid if defendant experienced a medical issue. Defendant screamed at Lamour to remove his foot and kicked his lower left leg. Lamour advised defendant she was under arrest for assaulting him. But when the officers attempted to place defendant in custody, she backed herself into a corner in the kitchen and hid her hands behind her back. The officers forcibly grabbed her arms, took her to the kitchen floor, and placed handcuffs on her wrists. After defendant was handcuffed, she continued to struggle with the officers. She refused to stand up and kept going limp. Because defendant would not walk, the two officers had to enlist the assistance of two firemen to get defendant to the patrol vehicle.

Defendant was ultimately charged with two counts of resisting and obstructing a police officer, MCL 750.81d(1), and one count of disturbing the peace, MCL 750.170. The jury found defendant guilty on all three counts. She was sentenced to three days in jail, with credit for three days served, and two years' probation. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

Defendant first argues that the prosecution presented constitutionally insufficient evidence to support her convictions. We disagree.

## A. STANDARD OF REVIEW

We "review de novo challenges to the sufficiency of the evidence." *People v Murphy*, 321 Mich App 355, 358; 910 NW2d 374 (2017). When we review a challenge to the sufficiency of the evidence, must examine the evidence, whether direct or circumstantial, in a light most favorable to the prosecution and determine whether a rational trier of fact could determine whether the crime's essential elements were proven beyond a reasonable doubt. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012); *People v Kenny*, 332 Mich App 394, 402-403; 956 NW2d 562 (2020). "A jury, and not an appellate court, observes the witnesses and listens to their testimony; therefore, an appellate court must not interfere with the jury's role in assessing the weight of the evidence and the credibility of the witnesses." *Kenny*, 332 Mich App at 403.

---

[4] The paramedics stepped away from the front porch to contact the doctor. Because it was not a life-threatening situation, the paramedics had to wait to speak with the doctor. By the time the paramedics received medical clearance to release defendant, the officers were already placing her in handcuffs.

## B. RESISTING AND OBSTRUCTING

To convict a defendant of assaulting, battering, wounding, resisting, obstructing, opposing, or endangering a police officer under MCL 750.81d(1), the prosecution must prove: "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer, and (2) the defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties." *People v Corr*, 287 Mich App 499, 503; 788 NW2d 860 (2010). And because citizens have a common-law right to resist illegal police conduct, the prosecution must also prove that the officer's action were lawful. See *People v Moreno*, 491 Mich 38, 48, 51-52; 814 NW2d 624 (2012). Because the lawfulness of the arrest is an element of the offense, it is a factual question for the jury to resolve. *People v Vandenberg*, 307 Mich App 57, 68-69; 859 NW2d 229 (2014).

In this case, defendant does not dispute that she kicked Lamour's foot or leg, that she did not submit to the arrest inside her home, or that she knew Lamour was a police officer. But she argues that there was insufficient evidence from which the jury could have concluded that (1) defendant knew or had reason to know that Lamour's actions were lawful, and (2) that Lamour's actions were lawful. Contrary to defendant's assertions, MCL 750.81d(1) requires only that defendant knew or had reason to know that the officers were "*performing [their] duties*" (emphasis added). MCL 750.81d(1) does not require the prosecution to establish that defendant knew that the officers' conduct was lawful. See *Moreno*, 491 Mich at 51-52; *People v Morris*, 314 Mich App 399; 886 NW2d 910 (2016). Given the testimony that the officers arrived in squad cars, were in uniform, identified themselves as police officers, and warned defendant that they would arrest her if her behavior continued, there was sufficient evidence to prove that defendant knew or had reason to know that the officers were "performing [their] duties." *Kenny*, 332 Mich App at 402-403.

Defendant further claims that the officers' actions were unlawful because Lamour violated her Fourth Amendment right to be free from unreasonable searches and seizures. To demonstrate the lawfulness of an officer's actions, the prosecution must prove that the officer "gave the defendant a lawful command, was making a lawful arrest, or was otherwise performing a lawful act." M Crim JI 13.1(4);[5] see *Moreno*, 491 Mich at 55-56. As this Court has recognized, "[o]ur state and federal constitutions guarantee the right against unreasonable searches and seizures." *People v Lemons*, 299 Mich App 541, 545; 830 NW2d 794 (2013). "[T]he reasonableness of a search and seizure is analyzed on the basis of the facts and circumstances of each case." *Id*. Generally, searches and seizures conducted without warrants are unreasonable. *Id*. "However, there are numerous exceptions to this general precept." *Id*. One of those exceptions is the emergency-aid exception, and another closely related one is the community-caretaking exception. *People v Slaughter*, 489 Mich 302, 312; 803 NW2d 171 (2011); *Lemons*, 299 Mich App at 545. "[T]he emergency-aid exception to the warrant requirement allows police officers to enter a dwelling without a warrant under circumstances in which they reasonably believe, based on

---

[5] We acknowledge that the standard criminal jury instructions are not binding authority. *People v Williams*, 288 Mich App 67, 76 n 6; 792 NW2d 384 (2010), aff'd 491 Mich 164 (2012).

specific, articulable facts, that some person within is in need of immediate aid." *Lemons*, 299 Mich Ap at 545-546 (cleaned up). The community-caretaking exception applies under similar circumstances. See, e.g., *People v Hill*, 299 Mich App 402, 406; 829 NW2d 908 (2013) ("Rendering aid to persons in distress is a community-caretaking function."). Whether it be pursuant to the emergency-aid exception or the community-caretaking exception, " 'the entry must be limited to the justification therefor, and the officer may not do more than is reasonably necessary to determine whether a person is in need of assistance, and to provide that assistance.' " *Lemons*, 299 Mich App at 545, quoting *People v Davis*, 442 Mich 1, 26; 497 NW2d 910 (1993). But "[o]fficers do not need ironclad proof of 'a likely serious, life-threatening' injury to invoke the emergency aid exception." *Michigan v Fisher*, 558 US 45, 49; 130 S Ct 546; 175 L Ed 2d 410 (2000). Instead, all that officers need is "an objectively reasonable basis for believing" that medical assistance was needed, or persons were in danger[.]" *Id*. (cleaned up).

Defendant acknowledges that the officers' wellness check was lawful. But she contends that the officers were no longer acting under the emergency aid exception to the warrant requirement once she answered the door, told them her name, told them that she did not call the police, did not complain of blindness or otherwise ask for assistance, did not show signs of breathing trouble, and told them she wanted them to leave. Defendant maintains that she was within her right to kick Lamour and resist her arrest because her Fourth Amendment rights were violated. We disagree.

A jury could determine that the officers' actions were reasonable. Both officers knew they were responding to "a medical call." When they arrived, the person who called 911 said that defendant "was having some type of medical emergency," "that she didn't know if it was some type of a diabetic issue or, like, a heart condition," " that . . . she wasn't sure if [defendant] was having a heart attack or a stroke 'cause her . . . words were slurred, her speech was slurred, she wasn't making any sense when she talked, and . . . that [defendant] had been drinking." Because defendant refused to cooperate with the paramedics, a medical assessment could not be conducted and the paramedics had to wait for a doctor's opinion. Under the circumstances, an officer could reasonably conclude that defendant could be in need of aid, emergency assistance, or protection from imminent injury. Flora testified that because there was a possible medical emergency, the officers "couldn't just leave." And Lamour testified that he "could tell there was somethin' else going on there," but he "wasn't quite sure." Both officers testified that they did their best to respect defendant's wishes that they leave her apartment, but also felt compelled to maintain a visual of her until she was medically cleared and maintain access to her apartment to ensure that medical personnel could render aid if defendant experienced a medical issue. Consistent with that goal, Lamour placed his foot in the doorway to try to keep defendant's door from closing.

In *Hill*, this Court hypothesized about what could have happened if the officers did not react in the manner that they did:

> Imagine that the police officers had decided against entering defendant's house and that defendant was inside unconscious or otherwise unable to communicate and in critical need of medical attention as a result of a criminal act or physiological event. In such a scenario, if defendant had later died due to a lack of timely aid, the community uproar over the officers' failure to enter the home would be deafening, and public criticism regarding the lack of police action would

be, in our view, reasonable and deserved in light of the surrounding circumstances. [*Hill*, 299 Mich App at 410-411.]

This Court recognized a similar conundrum in *Lemons*:

[T]here was a very real possibility that someone could have been inside who needed police assistance. In such a scenario, there would be consternation in the community if the officers turned and left the residence without further investigation. In such a situation, the criticism of the officers would be justified, as the public relies on the police to help in emergencies. Outrage with such a scenario would be further proof that the police officers acted reasonably in entering the condominium in this case. [*Lemons*, 299 Mich App at 549.]

Defendant fails to acknowledge that the same potential for disaster existed in this case. Or, as the prosecution states in its brief, "[d]efendant's claim that this was not an emergency is formulated with hindsight." Defendant's challenges are related to the credibility of the witnesses' testimony, which is a matter of weight, not sufficiency. See *People v Scotts*, 80 Mich App 1, 9; 263 NW2d 272 (1977). "It is the jury's task to weigh the evidence and decide which testimony to believe . . . and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v Unger (On Remand)*, 278 Mich App 210, 222; 749 NW2d 272 (2008) (cleaned up). Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find that the officers were acting under the emergency-aid exception and thus were performing a lawful act at the time that defendant kicked Lamour and resisted her arrest. Accordingly, we conclude that the prosecution presented sufficient evidence with respect to both resisting-and-obstructing charges.

## C. DISTURBING THE PEACE

Defendant was convicted of disturbing the peace under MCL 750.170, which states:

Any person who shall make or excite any disturbance or contention in any tavern, store or grocery, manufacturing establishment or any other business place or in any street, lane, alley, highway, public building, grounds or park, or at any election or other public meeting where citizens are peaceably and lawfully assembled, shall be guilty of a misdemeanor.

Defendant contends that MCL 750.170 does not apply because "[t]here was no meeting or lawful assembly inside [defendant]'s apartment or in the apartment building's common area." Defendant's argument ignores the plain language of the statute.[6] The Legislature used the word

---

[6] "The principal goal of statutory interpretation is to give effect to the Legislature's intent, and the most reliable evidence of that intent is the plain language of the statute." *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 360-361; 917 NW2d 603 (2018). "We accord to every word or phrase of a statute its plain and ordinary meaning, unless a term has a special, technical meaning or is defined in the statute." *Guardian*

"or" to separate the various places where it is unlawful to create a disturbance. " 'Or' is . . . a disjunctive [term], used to indicate a disunion, a separation, an alternative." *Jesperson v Auto Club Ins Ass'n*, 499 Mich 29, 35; 878 NW2d 799 (2016) (cleaned up). The word "or" here indicates that a "public meeting where citizens are peaceably and lawfully assembled" should be treated as an independent alternative location where it is unlawful to create a disturbance. In this case, the question was whether defendant was "in any street, lane, alley, highway . . . grounds or park" and there was no requirement that the prosecution establish that there was a "public meeting where citizens are peaceably and lawfully assembled."

Defendant further argues that she could not have violated MCL 750.170 because her conduct "did not 'present clear and present danger of riot, disorder, interference with traffic, or a threat to public safety,' a necessary element of disturbing the peace." In other words, she argues that her conduct did not constitute a "contention." *People v Weinberg*, 6 Mich App 345, 351; 149 NW2d 248 (1967). But MCL 750.170 "does not require both a disturbance and a contention to sustain a conviction." *Id*. And this Court has found that the statute's criminalization of "exciting a contention" has long been declared "unconstitutionally overbroad insofar as it criminalizes the peaceable public expression of ideas, merely because those ideas may be offensive to others." *Vandenberg*, 307 Mich App at 67.[7] Thus, this language must be read out of the statute. *Id.*

Viewing the evidence in the light most favorable to the prosecution, a jury could determine that defendant violated MCL 750.170. The officers testified that defendant was loud, belligerent, and using profanities on the shared front porch area of the apartment complex late at night. The paramedic testified that defendant "was rolling around on the ground, screaming, [and] cussing." The jury also heard defendant's behavior on the audio recordings from the officers' microphones worn on their uniforms. And the accompanying dashcam video played for the jury depicted interior lights turning on in neighbors' apartments. While defendant was, at times, inside her apartment, the officers testified that the incident went from inside the apartment to back outside multiple times. This Court has defined a "disturbance" as "something less than threats of violence . . . ." *Weinberg*, 6 Mich App at 351. It "is an interruption of peace and quiet; a violation of public order and decorum; or an interference with or hindrance of one in pursuit of his lawful right or occupation." *Id*. The jury could reasonably infer that defendant's screaming, cussing, and belligerent behavior outside the apartment late at night interrupted the peace and quiet of others who were either inside their apartments or outside.

---

*Environmental Servs, Inc v Bureau of Const Codes and Fire Safety*, 279 Mich App 1, 6; 755 NW2d 556 (2008). "Where the statutory language is unambiguous, the plain meaning reflects the Legislature's intent and the statute must be applied as written." *Honigman Miller Schwartz & Cohn LLP v City of Detroit,* 505 Mich 284, 294; 952 NW2d 358 (2020) (cleaned up).

[7] Consistent with *Vandenberg*, the trial court did not include the contention language in its instructions to the jury in this case.

## II. JURY INSTRUCTIONS AND INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant further argues that the jury instructions were constitutionally inadequate and she received ineffective assistance of counsel because counsel did not to seek to correct that error. We disagree.

### A. STANDARDS OF REVIEW AND PRINCIPLES OF LAW

"Generally, [t]his Court reviews de novo claims of instructional error." *People v Spaulding*, 332 Mich App 638, 652; 957 NW2d 843 (2020) (cleaned up). But because defendant did not object to or request any specific instructions on the record below, this issue is unpreserved. See, e.g., *People v Everett*, 318 Mich App 511, 526; 899 NW2d 94, 104 (2017) ("However, defendant failed to request the missing witness jury instruction during his trial and thus failed to preserve the issue for appellate review."). We review unpreserved arguments for plain error affecting substantial rights. *Spaulding*, 332 Mich App at 652. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To satisfy the third element, the defendant must show that the error "affected the outcome of the lower court proceedings." *Id*. Reversal is warranted "only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Allen*, 507 Mich 597, 614; 968 NW2d 532 (2021) (cleaned up). "A party's explicit and express approval of jury instructions as given waives any error and precludes appellate review." *Spaulding*, 332 Mich App at 653; see also *Kowalski*, 489 Mich at 504 ("Thus, by expressly and repeatedly approving the jury instructions on the record, defendant waived any objection to the erroneous instructions, and there is no error to review.").

"A criminal defendant has a constitutional right to have a jury determine his or her guilt from its consideration of every essential element of the charged offense." *People v Kowalski*, 489 Mich 488, 501; 803 NW2d 200 (2011). "A defendant is thus entitled to have all the elements of the crime submitted to the jury in a charge which [is] neither erroneous nor misleading." *Id*. (cleaned up). "Instructional errors that omit an element of an offense, or otherwise misinform the jury of an offense's elements, do not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence." *Id*. (cleaned up). Accordingly, an imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *Id*. at 501-502.

Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and law. *People v Haynes*, 338 Mich App 392, 429; 980 NW2d 66 (2021). Ordinarily, the trial court's factual findings are reviewed for clear error, and "the court's determination of whether those facts violated the defendant's right to the effective assistance of counsel is reviewed de novo." *Id*. But because defendant did not move for a new trial or request an evidentiary hearing in the trial court, *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012), and she did not file a motion to remand for an evidentiary issue, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020), this issue is unpreserved. Therefore, our review is limited to errors apparent on the record. *Haynes*, 338 Mich App at 429.

## B. RESISTING AND OBSTRUCTING

In this case, the trial court instructed the jury with respect to all three elements of the resisting-and-obstructing charges:

> The Defendant is charged with two separate crimes of assaulting, battering, wounding, resisting, obstructing, opposing or endangering Police Officers Corporal Flora and Officer Lamour who were performing these duties. I'm only reciting this to you once, but you have to consider these two crimes with respect to Officer Flora and then Officer Lamour because they're two separate crimes.

> Now to prove these charges, the Prosecutor must prove each of the following elements beyond a reasonable doubt: First, that the Defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered Corporal Flora and/or Officer Lamour who were police officers. Obstructing includes the use . . . or threatened use of physical interference or force or a knowing failure to comply with a lawful command. The Defendant must have actually resisted by what she said or did, but physical violence is not necessary. Second, that the Defendant knew or had reason to know that Corporal Flora and/or Officer Lamour were police officers performing their duties at the time.

> Third, that Corporal Flora and/or Officer Lamour gave the Defendant a lawful command, was making a lawful arrest, or was otherwise performing a lawful act. A person may resist an unlawful arrest or police conduct. The Prosecutor must prove beyond a reasonable doubt that the arrest was legal, that the officers were acting within their legal authority. It is up to you to determine whether the Officers' actions were legal according to the law as I have just described it to you.

After the jury was instructed, trial counsel stated that he did not have any objection to the instructions. In fact, trial counsel stipulated to the instructions given by the trial court. This constitutes waiver of any error and generally precludes appellate review. *Kowalski*, 489 Mich at 504; *Spaulding*, 332 Mich App at 653. Nevertheless, because defendant raises an ineffective assistance challenge with respect to the alleged instructional errors we will review this issue.

The trial court instructed the jury consistent with M Crim JI 13.1, which addresses the elements of the offense of resisting and obstructing a police officer, as charged under MCL 750.81d. Defendant argues that the instructions should have included an explanation advising the jury how to determine whether the officers' actions were lawful, as specified in Use Note 4 of M Crim JI 13.1.[8] Contrary to defendant's assertions, the trial court did provide this explanation. Consistent with the parameters of M Crim JI 13.5, which pertains to legal acts and duties in the context of a charge of resisting and obstructing an officer, the trial court instructed the jury: "A person may resist an unlawful arrest or police conduct. The Prosecutor must prove beyond a reasonable doubt that the arrest was legal, that the officers were acting within their legal authority.

---

[8] Use Note 4 of M Crim JI 13.1 states, "The court should provide detailed legal instructions regarding the applicable law governing the officer's legal authority to act."

-9-

It is up to you to determine whether the Officers' actions were legal according to the law as I have just described it to you." Because the lawfulness of the arrest is an element of the offense, it is a factual question for the jury to resolve. *Vandenberg*, 307 Mich App at 68-69. The instructions as given "fairly presented the issues for trial and sufficiently protected the defendant's rights." *People v Canales*, 243 Mich App 571, 574; 624 NW2d 439 (2000). Although the trial court did not go into detail regarding the officer's legal authority to act, "an imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *Kowalski*, 489 Mich at 501-502. Accordingly, we would find no clear error in the trial court's instructions even if this issue had been fully and properly preserved.

## C.  DISTURBING THE PEACE

The trial court instructed the jury on the elements of disturbing the peace:

> The Defendant in the third count is charged with Disturbing the Peace.  To prove this charge, the Prosecutor must prove each of the following elements beyond a reasonable doubt: First, that the Defendant was at a street, lane, alley, highway, public grounds, or park at Greenwood Apartments.  Second, that the Defendant intentionally engaged in conduct that threatened public safety or disrupted the peace and quiet of other persons present or interfered with the ability of other persons to perform legal actions or duties.  The Defendant must have intentionally engaged in conduct that went beyond stating her position or opinion or the mere expression of ideas.

During deliberations, the jury asked for more clarification on the above instruction.[9]  The jury was instructed:

> What I'll ask you to do is look at instruction 40.1, Disturbing the Peace, and when you look at subsection 2, you will need to determine as a fact, was the Defendant at a street, a lane, alley, highway, public grounds, or park at Greenwood Apartments?  So, it doesn't have to be all of the above, it could be any of them.  I would simply state that public grounds would be anything open to the public, a common normal meeting [sic],[10] that's what you should apply here.  So, you decide as a fact was she at a public place and did she disturb the peace, okay?

As discussed above, trial counsel stipulated to the instructions given by the trial court and stated that he did not have any objection to the instructions after the jury was instructed.  And when the jury asked for clarification, counsel expressly agreed "to leave it in the Court's

---

[9] The jury asked the following question:  "Need more clarification on  Disturbing the Peace.  What constitutes public grounds, shared porch, parking lot, front lawn, apartment complex that is not owned?"

[10] The prosecution suggests that, based on the context, the transcript should read "meaning," not meeting.  We agree.

discretion." Although this constitutes waiver of the issue for appellate review, *Kowalski*, 489 Mich at 504, because defendant raises an ineffective assistance challenge with respect to the alleged instructional errors we will review this issue.

The trial court instructed the jury consistent with MCL 750.170 and M Crim JI 40.1, with a slight deviation from the standard language of M Crim JI 40.1 by including "at Greenwood Apartments." The court resolved the jury's question during deliberations by instructing them to consider the common definition of what constitutes public grounds. Defendant contends that the court's instruction as to the second element of the offense was overly broad and encompassed lawful conduct and constitutionally-protected speech.[11] But this argument ignores the fact that the court instructed the jury that "[t]he Defendant must have intentionally engaged in conduct that went beyond stating her position or opinion or the mere expression of ideas." The instructions as given "fairly presented the issues for trial and sufficiently protected the defendant's rights." *Canales*, 243 Mich App at 574. Although the trial court slightly deviated from the standard language of M Crim JI 40.1 by including "at Greenwood Apartments," "an imperfect instruction is not grounds for setting aside a conviction if the instruction fairly presented the issues to be tried and adequately protected the defendant's rights." *Kowalski*, 489 Mich at 501-502. Accordingly, we would find no clear error in the trial court's instructions even if this issue had been fully and properly preserved.

## D. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that she was denied effective assistance of counsel because trial counsel failed to object to the defective jury instructions. We disagree.

"To prevail on a claim of ineffective assistance, a defendant must, at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness and (2) a reasonable probability exists that the outcome of the proceeding would have been different but for trial counsel's errors." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (cleaned up). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018).

As we have already discussed, we find no error in the instructions as given. We will not impute error to trial counsel for failure to object to jury instructions when the instructions themselves are not erroneous. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000). Accordingly, trial counsel did not render ineffective assistance by failing to object to the

---

[11] Defendant claims that "[u]nder the instruction provided by the trial court, any person who drives while under the influence or spreads misinformation about vaccines would also be guilty of disturbing the peace. MCL 750.170 does not criminalize this type of conduct."

instructions or by failing to request "better" instructions.  Because defendant has not established that trial counsel's performance fell below an objective standard of reasonableness, we find that her claim of ineffective assistance fails.

Affirmed.

/s/ Sima G. Patel
/s/ Mark T. Boonstra
/s/ Michelle M. Rick